[No. 12167. In Bank.— December 18, 1890.]

MARY E. STAPLES, RESPONDENT, v. HENRY MAY,
APPELLANT.

MINES — MORTGAGE OF PATENTED MINERAL TRACT — APPURTENANCES —
LODE IN ADJOINING TRACT.— A mortgage of a patented tract of mineral
land, with the appurtenances thereto, does not cover an undeveloped por-
tion of a lode the *situs* of which is in land adjoining the patented tract;
and such portion of the lode does not become parcel of or appurtenant to
the tract mortgaged by being subsequently connected therewith by work-
ings on the lode.

ID. — SUBSEQUENT POSSESSION — INCLOSURE OF MINERAL LAND — TITLE
TO MINERAL LODE. — The subsequent possession of the adjoining tract,
acquired by actual inclosure thereof by the mortgagor, will not inure to
the benefit of the morgagee, but is sufficient to give the possessor title to
a mineral lode contained therein as against all persons not connecting
themselves with the source of title by compliance with the mining laws
of the United States.

ID. — FORECLOSURE SUIT — APPOINTMENT OF RECEIVER — JURISDICTION —
VOID ORDER. — An order appointing a receiver in a foreclosure suit, in so
far as it confers the right to occupy or mine in land not included in the
mortgage or trust deed sought to be foreclosed, is to that extent in ex-
cess of the jurisdiction of the court and void.

ID. — POWER OF RECEIVER — CONSTRUCTION OF ORDER — MINING WITHOUT
AUTHORITY. — An order appointing a receiver in a foreclosure suit must
be construed with reference to the pleadings upon which it is based, and
cannot confer color of authority upon the receiver to extract ores from
lands not covered by the securities involved in the suit.

ID. — LIABILITY OF RECEIVER — PROPERTY OF MORTGAGOR — RIGHTS OF
CREDITORS — PROCEEDINGS SUPPLEMENTAL TO EXECUTION. — If the re-
ceiver works ores in lands of the mortgagor which are not included in
the securities involved in the foreclosure suit, he becomes liable to the
mortgagor as a trespasser for the net proceeds of the ore extracted; and
the general creditors of the mortgagor may avail themselves of such lia-
bility by proceedings supplemental to execution.

ID. — UNAUTHORIZED EXTRACTION OF ORES — COMMON SYSTEM OF WORKING
— NET PROCEEDS. — The fact that the part of the adjoining lode from
which the ores were taken by the receiver was connected by a common
system of working with the mortgaged premises, which were worked at
a loss, does not relieve the receiver from liability for the net proceeds
of the ores taken.

ID. — EX PARTE APPOINTMENT OF RECEIVER — PRESUMPTION — RIGHTS OF
GENERAL CREDITORS. — Where the orders appointing the receiver were
made *ex parte*, and it is not shown that their terms, or the proceedings of
the receiver under them, ever came to the knowledge of the mortgagor,
and it appears that the mortgagor was insolvent, and left its general
creditors to recover what they could out of the property, without objec-

tion, the presumption is, that the mortgagor desired its property to go to its creditors according to their legal rights, and never approved the proceedings of the receiver in removing ores from the lode in the adjoining tract.

Execution — Supplemental Proceedings — Torts upon Property of Judgment Debtor — Creditor's Bill — Order Allowing Suit. — Proceedings supplemental to execution can reach choses in action arising from torts committed on the property of the judgment debtor which might be reached by a creditor's bill; and the court in the supplemental proceedings may authorize a suit by the judgment creditor to recover such choses in action.

Appeal from an order of the Superior Court of Santa Clara County denying a new trial.

The facts are stated in the opinion of the court.

*T. I. Bergin,* and *McAllister & Bergin,* for Appellant.

The descriptions in the mortgage were sufficiently comprehensive to operate upon the tract of land described in the complaint in this action, although that tract is not specifically described in them. (*Sheets* v. *Selden's Lessee,* 2 Wall. 187; *Whitney* v. *Olney,* 3 Mason, 280; *Bank of British North America* v. *Miller,* 7 Saw. 169; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 13.) The plaintiff in the foreclosure suit was not only entitled but was bound to foreclose. (*Ould* v. *Stoddard,* 54 Cal. 614.) Both instruments, the McCalmont mortgage and the deed of trust to the Farmers' Loan and Trust Company, were subject to foreclosure. (*Sacramento etc. R. R. Co.* v. *Superior Court of San Francisco,* 55 Cal. 458; *Shillaber* v. *Robinson,* 97 U. S. 78.) It was the duty of the court in the foreclosure case, and it had jurisdiction, to determine and adjust the rights of all of the parties, and declare the character and extent of their liens, as well as enforce their respective rights. (*Cross* v. *Zellerbach,* 63 Cal. 641; *Graham* v. *Railroad Company,* 3 Wall. 711; *Hefner* v. *Northwestern Life Ins. Co.,* 123 U. S. 756, 757; *Real Estate Savings Institute* v. *Collonious,* 63 Mo. 295.) The court had jurisdiction to appoint May receiver, and authorize

him to take such steps as were necessary to prevent the property from going to waste, as well as to authorize him to raise the funds necessary to preserve the property from going to waste and destruction. (*McLane* v. *Placerville etc. R. R. Co.*, 66 Cal. 616, 622, 627, 630.) An admitted trespasser will be allowed for expenditures made in the preservation of the property trespassed upon, or that go to its amelioration. (*Putnam* v. *Ritchie*, 6 Paige, 403–406; *Bright* v. *Boyd*, 1 Story, 494; *Jackson* v. *Ludeling*, 99 U. S. 513, 537.) While it is true that the party aggrieved may waive tort, and sue in *assumpsit* for money had and received, as the case may be, such waiver is never allowed to the prejudice or detriment of the party affected thereby. (*Lewis* v. *Dubose*, 29 Ala. 219.) It is doubtful whether an action for money had and received would lie. (*Sergeant* v. *Stryker*, 16 N. J. L. 464; 32 Am. Dec. 404.) Such action is founded upon equitable principles, and may be defended upon equitable principles. (*Curtis* v. *Ward*, 20 Conn. 204; 3 Sutherland on Damages, 482.) As May could not be held responsible to the company, neither can he be held responsible to the plaintiff. (*Smith* v. *Cunningham*, 67 Cal. 263.) Even were there any liability on the part of May to the company, such liability could not be reached through process of attachment or garnishment. Only legal debts or liabilities are subject to garnishment or attachment. (*Hassie* v. *G. I. W. U. Congregation*, 35 Cal. 378; *Webster* v. *Steele*, 75 Ill. 544; Drake on Attachments, sec. 547; *McKelvey* v. *Crockett*, 18 Nev. 242; *Lippitt* v. *Am. Wood Paper Company*, 15 R. I. 141, 145; *Eastman* v. *Thayer*, 60 N. H. 575.) A liability for tortious conversion of property is not a debt subject to attachment or garnishment. (*Lewis* v. *Dubose*, 29 Ala. 220; *Holcomb* v. *Winchester*, 52 Conn. 447; 52 Am. Rep. 609; *Detroit Post and Tribune Company* v. *Riley*, 46 Mich. 459; *Paul* v. *Paul*, 10 N. H. 117; *Despatch Line* v. *Bellamy*, 12 N. H. 205, 238; 37 Am. Dec. 203; *Getchell* v. *Chase*, 37 N. H. 109; Drake on At-

tachments, secs. 544, 545, 547, 548; *Boyle* v. *Maroney,* 73 Iowa, 74; *Johnson* v. *Brant,* 38 Kan. 758, 759.)

*S. F. Leib,* and *L. D. McKissick,* for Respondent.

The order appointing May receiver is not broad enough to include property not mentioned in the complaint. Even if the order had attempted to appoint a receiver for property not in the mortgage presented for foreclosure, it would, as to such outside property, have been void for want of jurisdiction. (*Corwithe* v. *Griffing,* 21 Barb. 9.) In going upon and extracting valuable ores from other property of the mining association than that which was included in the McCalmont mortgage, defendant rendered himself liable to the owner in action of trespass, notwithstanding the fact that the property was mortgaged, and the mortgagor insolvent. (Beach on Receivers, sec. 294.) It is clearly implied in the McCalmont mortgage and in the deed of trust that the mining association should hold possession and receive the earnings until the proper judicial authority should interpose and take possession. (*Gilman* v. *Tel. Co.,* 91 U. S. 603; *American Bridge Company* v. *Heidelbach,* 94 U. S. 798, and cases cited; *Chinnery* v. *Black,* 3 Doug. 391.)

BEATTY, C. J.—This is an appeal from an order overruling defendant's motion for a new trial. The cause was originally submitted in Department One, where the order appealed from was reversed upon grounds stated in an opinion by Commissioner Foote. (23 Pac. Rep. 710.)

After a rehearing and a more careful consideration of the record, we find it necessary to modify in some particulars the statement of the case as then made.

The facts are as follows: On the first day of August, 1881, in the superior court of Santa Clara County, the plaintiff and respondent herein recovered a judgment against the Santa Clara Mining Association of Balti-

more, a foreign corporation, for five thousand dollars, upon which execution was issued and returned unsatisfied. She then — proceeding under sections 717, 718, 719, and 720 of the Code of Civil Procedure — cited this defendant to answer as to his indebtedness to the corporation, and in due course obtained an order from the superior court, authorizing her to institute and prosecute an action to recover any indebtedness owing by said defendant to said corporation. In pursuance of that order, she commenced this action in October, 1881.

In her complaint she sets out the proceedings above mentioned, and alleges that between July 19, 1880, and May 31, 1881, said corporation was the owner of a tract of land, containing 160 acres, in Santa Clara County, together with the minerals and ores therein contained. This allegation is not only not denied by the answer, but is expressly found by the court to be true, and is in no wise assailed by the appellant, so that this fact at least may be set down as unquestionable: that between the dates mentioned, the Santa Clara Mining Association of Baltimore was the owner of the tract of land specifically described in the complaint, together with the ores and minerals therein contained. Whether the corporation was so the owner of said tract at a prior date — that is, at the date of the mortgage and trust deed hereinafter mentioned — is, as will be seen, one of the principal questions in the case, and will call for some discussion in its proper connection. Returning to the plaintiff's complaint, her only other allegations which it is necessary to note here are, that between said dates — July 19, 1880, and May 31, 1881 — the defendant entered into and upon said tract of land; mined and extracted therefrom ore of the value of one hundred thousand dollars and upwards; reduced the same to quicksilver; sold it, and received therefor over one hundred thousand dollars, no part of which had been paid to said corporation.

These allegations are denied in the answer; and in addition to such denials, the defendant sets out with great fullness the proceedings in a foreclosure suit against said corporation, in which he was appointed receiver of the property mortgaged, which included, as he alleges, the land and mine specifically described in the complaint in this action.

The facts with respect to the mortgage, action to foreclose, appointment of defendant as receiver, and his proceedings under such appointment are as follows: In the year 1873, said Santa Clara Mining Association was the owner of a tract of land, in Santa Clara County, containing about eleven hundred acres, and adjoining the tract described in the complaint herein. In this eleven-hundred-acre tract there existed a vein or lode of cinnabar, upon which some mining had been done, but at that time the lode had not been worked or explored outside of the limits of that particular tract.

Such being the case, on the 14th of June, 1873, said corporation, to secure its bonds for one hundred thousand dollars, executed a mortgage to McCalmont, and on the same day, to secure its bonds to the amount of four hundred thousand dollars, executed a deed of trust to a loan and trust company. In the year 1880, an action was commenced by the assignee of the McCalmont mortgage, against the mortgagor and other numerous parties, including the trustees under said trust deed, to foreclose the mortgage. The complaint in this action alleged the insolvency of the corporation, the existence of mines and mining works upon the mortgaged premises, the danger of loss and destruction to the property — the mine especially — if the pumps were stopped and mining operations suspended during the litigation, and prayed the appointment of a receiver to take charge of the property, and to protect and preserve it.

Accordingly, an order was made *ex parte*, at the time of the commencement of the suit, appointing this defendant

such receiver, and from time to time thereafter other orders were made by the superior court, authorizing him to borrow large sums of money to enable him to work the mine, pay taxes, and do other things deemed necessary for the preservation of the property which was the subject of the litigation.

In pursuance of these orders, the defendant entered into possession of the mine and other property, borrowed money, extracted ore, reduced it to quicksilver, which he sold, and applied the proceeds, with the general result of leaving himself, at the end of the litigation, indebted to the extent of about sixty thousand dollars for borrowed money. But although his entire operations resulted in the loss of this large sum, there was one part of the lode —known as station 8—from which he took about one hundred and thirty-eight thousand dollars, at a cost of about one hundred thousand dollars, leaving a net profit of thirty-eight thousand two hundred dollars, all of which was prior to May 1, 1881, and two years before entry of the decree in the foreclosure suit.

It is to this thirty-eight thousand two hundred dollars, or a share of it, that the plaintiff herein makes claim, upon the ground that station 8 — the part of the lode from which the ore producing it was taken — is entirely outside of the mortgaged premises, and consequently, that the appellant, as receiver in the foreclosure suit, had no right to enter there; that he was in fact a trespasser, and became liable to the corporation for at least the net value of the ore. Such was the view of the superior court, and such the theory upon which the judgment in favor of the respondent was based.

Against this view the appellant urges a number of objections, which we shall proceed to consider.

1. It is claimed that the McCalmont mortgage embraced station 8. But this position we do not think can be sustained. Station 8 is a part of the lode, the *situs* of which is within the 160-acre tract specifically de-

scribed in the complaint herein, and wholly without the 1,100-acre tract to which said mining corporation had title at the date of the McCalmont mortgage, and at that time the lode had not been followed beyond the limits of said tract.

The following is the description contained in the mortgage: "All that certain parcel or tract of land being and lying in the county of Santa Clara, state of California, designated as lot number thirty-nine (39), in township eight (8) south, of range one (1) east, and lot number forty (40), in township eight (8) south, of range one (1) west, of the Mount Diablo meridian, containing eleven hundred and nine acres and sixty-seven hundredths of an acre, being the same parcel or tract of land more particularly described and delineated by plat, and to which title was confirmed in and by that certain patent issued by the United States of America, on the twentieth day of September, A. D. eighteen hundred and seventy-one, recorded in liber B patents, page 31, on the twelfth day of October, 1871, and being the same premises described in the above-recited mortgage, to R. D. Cullen, together with all and singular the buildings and improvements thereupon erected, made, or being, and the rights, roads, ways, waters, mines, minerals, mining rights, machinery, privileges, appurtenances, and advantages to the same belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and all the estate and interest, right, title, use, trust, claim, and demand whatsoever, both at law and in equity, of the said Santa Clara Mining Association of Baltimore in, unto, and out of the said described property and premises, or any part thereof."

It is evident that this description cannot be stretched to cover an undeveloped portion of the lode contained in land adjoining the tract described. It is neither parcel of nor appurtenant to such tract, nor does it become

so by being subsequently connected, by workings on the lode, with that portion of the mine included in the description.

2. It is contended that the description in the trust deed to the loan and trust company is sufficiently comprehensive to include station 8, and that since the parties secured by the trust deed were parties to the foreclosure suit, claiming affirmative relief and concurring in the application for the appointment of May as receiver, he was thereby authorized to enter and mine at station 8.

It is one objection to this proposition, that it appears that the defendant extracted all the ore and made all the profit from station 8 with which he is charged in this action before the loan and trust company sought the foreclosure of their deed or asked for his appointment. But without regard to this objection, the force of which we do not care to consider, we think it must be held that the description in the trust deed embraces no more than that of the McCalmont mortgage; for it contains nothing material in addition to the description above quoted, except these words: " and all the lands, tenements, mines, minerals, real and personal property, rights, privileges, and appurtenances of every kind whatsoever, of or belonging to said party hereto of the first part, in Santa Clara County aforesaid." This part of the description would no doubt have embraced station 8 if the land in which it is found had belonged to the corporation at the date of the trust deed. But it did not belong to the corporation at that time. The court so finds by finding, as it does, that no part of the tract described in the complaint herein was included in said trust deed, and there is nothing in the bill of exceptions to show that this finding was contrary to the evidence.

The statement in respect to this matter is as follows: " That it was the owner of the lands, premises, and property specifically described in the McCalmont mortgage,

in the answer of the defendant herein mentioned, and of the lands, premises, and property specifically described in the deed of trust to the Farmers' Loan and Trust Company of New York, in the answer of the defendant herein mentioned, at the time of the execution of both of said instruments; that the particular piece of land in the complaint in this action described is not included in the specific metes and bounds of the lands described in the said McCalmont mortgage, or in the lands specifically described in the said deed of trust of the Farmers' Loan and Trust Company mentioned therein; that at the time of the execution of the said McCalmont mortgage and said deed of trust, the legal title thereto was in the United States, and has hence hitherto been and still is in the United States, otherwise than as such title may be affected or modified by the facts following, that is to say: At the time of the execution of the said McCalmont mortgage and said deed of trust, and prior thereto, said Santa Clara Mining Association made claim of title thereto; that said particularly described parcel of land immediately joins upon the lands described in said McCalmont mortgage and in said deed of trust, and there was no fence, inclosure, or line separating said particularly described parcel of land from the lands included in the said McCalmont mortgage and in said deed of trust; that at that time said Santa Clara Mining Association had not extended its mining operations into or upon any part of said parcel of land in said complaint particularly described; that at that time the claim of title of said Santa Clara Mining Association to said parcel of land in said complaint particularly described was in fact recognized by the immediate neighbors in that vicinity, but the same was not then inclosed by any fence or inclosure separating the same from the lands surrounding it; that subsequently to the execution of said instruments, the same was inclosed by inclosures, which, with the inclosures inclosing the land specifically

described in the said McCalmont mortgage and in said deed of trust, would make a complete inclosure, save and except that on the southerly part of said parcel of land in said complaint particularly described, there was no fence; on the side of said land not so fenced the same consisted of a cañon, which cañon of itself constituted a natural barrier, preventing cattle from getting into or going out of said parcel of land in said complaint particularly described, and which cañon constituted the only inclosure upon that side of said parcel of land in said complaint particularly described."

This statement fully sustains the finding that at the date of the trust deed the smaller tract, containing station 8, did not belong to the corporation, and also supports the finding —if it needed support—that during the time defendant was mining at said station said smaller tract did belong to the corporation, at least as against all persons not connecting themselves with the source of title by compliance with the mining laws of the United States.

3. The third point of the appellant is disposed of in saying, as we have already said, that neither the mortgage nor the trust deed embraces station 8.

4. It is contended that even if station 8 was not covered by the mortgage or trust deed, it was comprehended in the terms of the order appointing the receiver, and being at that time connected with the mines in the larger tract, and worked as a part of the same general system, under a single management; and as the proceeds of that as well as of other parts of the lode were devoted to the care and preservation of the whole, it necessarily participated in the advantages derived from the appointment of the receiver,— an advantage which inured to the mortgagor, in enhancing the value of the security and diminishing its personal liability. Wherefore it is contended May could not have become liable to the corporation as a trespasser, and if not, that he was never liable to the plaintiff.

This position also appears to be untenable.

As to the terms of the order, if they embraced property not included in either of the securities, the order was. to that extent in excess of the jurisdiction of the court and void.   But construed with reference to the pleadings upon which they were based, the several orders appointing the receiver and defining his powers and duties did not apply to any property except that against which the foreclosure was sought.   We do not think the receiver had even color of authority to extract ores within the tract described in the complaint herein, and thus destroy the very substance of an estate in which the mortgagees and beneficiaries of the trust had no direct interest, but which was, on the contrary, subject to the claims of the general creditors of the corporation. Nor do we think that the circumstance that station 8 was connected with other portions of the mine, with which it was worked as part of the same system, and under a single management, makes any difference.   It was none the less a distinct piece of property, to which the mortgagees, and the receiver as their agent, had no right.   While they remained in the hands of the mortgagor it was perfectly natural that both properties should be worked together, if that was the more economical plan, —just as a farmer might work a mortgaged and an unmortgaged tract together, or to give a more forcible illustration, just as owners of separate locations on the same vein often use the same shaft and hoisting apparatus for raising ores, or as many locators sometimes combine for the purpose of pumping water from the lower levels.   In all such cases there is a common system of working, but the properties are distinct.   A receiver of a mortgaged field would have no right to cut timber from other land of the mortgagor to build fences or houses on the tract covered by the mortgage, although it might be for the benefit of the mortgagor by preserv-

ing or enhancing the value of the security, and lessening his personal liability.

And, moreover, there is nothing to show in this case that the value of the security was in any degree enhanced by the extraction and reduction of the ores. No doubt it was necessary to pump the water out of the mine, and very probably it appeared at the time to be a wise measure to carry on mining at the same time with the pumping; but if this was so, we know of no principle upon which station 8 could be charged with the expense of keeping other parts of the mine free of water. And if it be said that the works at station 8 were also preserved by and participated in the benefits of the pumping, it may be replied that there is nothing to show that its equitable share of the expense of pumping was not included in the one hundred thousand dollars deducted from the gross value of the ores extracted from station 8.

As to the claim that the corporation stood by and saw what May was doing, and, by not objecting, tacitly approved his proceedings, it does not appear to be borne out by the record. The orders appointing the receiver were made *ex parte*. It is not shown that their terms, or the proceedings of the receiver under them, ever came to the knowledge of the corporation. It does appear that the corporation was insolvent, and it seems to have left its creditors to get what they could out of its property, without making any sign of approval or objection to their proceedings. The only presumption we are entitled to indulge, under such circumstances, is, that it desired its property to go to its creditors according to their respective legal rights, viz., the mortgaged property to its mortgagees, and the rest to its creditors at large. No advantage could possibly accrue to it from any other disposition; for just so far as its ultimate personal liability to its mortgagees might be diminished by taking from its unpledged assets to enhance the security of the mortgagees, just so far was its ultimate liability

to the general creditors increased. Assuming, therefore, as we ought to assume, that the actual desire of the corporation was, that its unpledged assets should be devoted to the payment of its general creditors, and that it never, either expressly or tacitly, approved the proceedings of the receiver in removing the ores from station 8, we must hold that he became liable to the corporation for the net proceeds of such ores.

It is strenuously contended that this conclusion does a great injustice to the receiver, and that an opposite conclusion would do no injustice to the general creditors, because it is said the ores in place were not liable to attachment, and were only made available by means of a fund raised upon the credit of the secured creditors. We cannot, however, see the injustice of requiring the receiver to put back into the fund, where it belongs, a sum of money to which he never had a right; and as to the other proposition, we do not know why the 160 acres of land, with all its ores in place, were not liable to attachment, nor is there anything to show that the ores in place at station 8 were worth less than their net proceeds.

5. It is contended that the liability of May, which sounded wholly in tort, was not the subject of garnishment or attachment.

The question here, however, is, not what classes of debts are the subject of garnishment or attachment, but what liabilities of third parties to an execution debtor can be reached by proceedings supplemental to the execution. We know of no reason to hold to any narrower construction of our statutory provisions on this subject than obtains in New York, where it is said that these proceedings can reach everything which could formerly have been made to contribute to the payment of judgments by the aid of creditors' bills, and where it was held that creditors' bills would reach choses in action arising from torts committed on the property of the

judgment debtor, to which his creditor would have a right to resort. (Freeman on Executions, sec. 420; *Hudson* v. *Plets*, 11 Paige, 180.)

The sixth objection of the appellant has been sufficiently stated and considered in connection with the fourth.

We find no error in the order of the superior court, and it is therefore affirmed.

Fox, J., Sharpstein, J., and McFarland, J., concurred.