[Civ. No. 4563.   Second Appellate District, Division One.—February 7, 1927.]

## GEORGE A. BINNEY, Jr., Appellant, v. SAN DIMAS LEMON ASSOCIATION (a Corporation), Respondent.

[1] Mortgages — Foreclosure — Receivers — Prior Sale of Crop — Collection of Proceeds—Void Order.—An order authorizing and directing the receiver, appointed in an action to foreclose a mortgage on a citrus grove, to collect from a fruit association the proceeds from fruit picked from the mortgaged premises and delivered to said association after the commencement of the action but prior to the appointment of said receiver, is void, notwithstanding the mortgage covers the citrus grove and the "rents, issues and profits."

[2] Id.—Assignment of Proceeds—Knowledge—Failure to Attach Order—Payment to Receiver—Civil Liability.—Where prior to the rendition of judgment in such foreclosure action the mortgagor assigns to a third person his claim against said fruit association, and said assignee takes with full knowledge of the appointment of the receiver and of all the facts pertinent to the controversy, and neither the mortgagor nor said assignee takes any appeal from the order directing the receiver to collect the proceeds from said association, but permits the judgment to become final, nor does said assignee institute any proceeding in connection with the mortgage foreclosure action to remedy the wrong and the ensuing damage, said fruit association, in paying the money to the receiver pursuant to the order of the court, will be protected from civil liability to said assignee.

---

(1) 41 C. J., p. 624, n. 87; 42 C. J., p. 129, n. 17 New.   (2) 42 C. J., p. 129, n. 17 New.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Carlos S. Hardy, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Clark & Law for Appellant.

Farrand & Slosson and Hugh Ward Lutz for Respondent.

HOUSER, J.—The salient facts in this appeal appear to be that George A. Binney was the owner of a citrus grove and that he executed and delivered a mortgage thereon, in-

cluding the "rents, issues and profits," to Edwin O. Kennard and Flora H. Kennard. The indebtedness secured by the mortgage not having been paid, suit was brought to foreclose the mortgage, and somewhat later a receiver in the action was appointed by the court. Between the time that the suit was commenced and the date of the appointment of the receiver the defendants in that action picked fruit from the mortgaged premises and delivered the fruit to San Dimas Lemon Association (the defendant in this action), which fruit was later sold by said association for the sum of $603.99, and which amount, on demand by the receiver, was paid to him. Thereupon George A. Binney assigned to his son, George A. Binney, Jr., all his interest in the proceeds of the sale of the fruit, and George A. Binney, Jr., commenced the instant action against the San Dimas Lemon Association for the money received by it for the fruit. Judgment was rendered in favor of the defendant, and plaintiff has appealed therefrom to this court. It also appears that the receiver in demanding from San Dimas Lemon Association the amount of money received by it for the fruit was acting within the express powers attempted to be conferred upon him by the trial court.

[1] The first question for the consideration of this court involves the validity of the order made by the trial court in directing the receiver to collect the proceeds of the fruit already picked from the mortgaged premises at the time of the appointment of the receiver.

Although the exact question here presented has not been ruled upon by the appellate tribunals of this state, the reports are by no means silent on the point affecting the validity of such an order.

In the early case of *Montgomery* v. *Merrill*, 65 Cal. 432 [4 Pac. 414], a mortgage which there was being foreclosed, like the one in the instant case, included the rents, issues, and profits, and a receiver who had been appointed by the court harvested and sold a crop which was growing upon the mortgaged premises *at the time the receiver took possession*. It appearing that at the foreclosure sale a sum was realized insufficient to pay the debt secured by the mortgage, by order of the trial court the money received by the receiver from the sale of such crop was applied to payment of the deficiency. On appeal the court held in effect that

(as is stated in the subsequent case of *Treat* v. *Dorman,* 100 Cal. 623, 625 [35 Pac. 86, 87]), "not only the land described in the complaint, but the rents, issues and profits thereof were mortgaged, so that the crop which the receiver took possession of was a part of the mortgaged property."

In the case of *Treat* v. *Dorman,* 100 Cal. 623 [35 Pac. 86, 87], the principle announced in *Montgomery* v. *Merrill, supra,* as applied to the action between the mortgagor and the mortgagee, is extended so as to apply as between a mortgagee of the land and a subsequent mortgagee (with notice) of the crops alone. (See, also, *Locke* v. *Klunker,* 123 Cal. 231, 236 [55 Pac. 993].)

In the case of *Simpson* v. *Ferguson,* 112 Cal. 180 [53 Am. St. Rep. 201, 44 Pac. 484], the controversy was between a mortgagee of the land, together with the rents, issues, and profits thereof, and a subsequent mortgagee (without notice) of the growing crop. Touching the point here at issue, in the course of the opinion the following language (in part) was used by the court: " . . . while it is perfectly true that growing crops may be either personal or real property, according to circumstances, and while, as suggested by respondent, a mortgage of the land gives a lien upon everything that would pass by a grant of the land, which includes crops growing thereon, it is, nevertheless, well established that such lien, so far as the growing crops are concerned, is limited in its effect to the crops growing upon and unsevered from the land at the time of foreclosure. It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, where, as in this state, the mortgage creates no estate in the mortgagee, but confers only a lien upon the property, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist. This doctrine is thoroughly well settled, with no considerable diversity upon the subject among text-writers and the courts."

The court then quotes from Jones on Mortgages, fifth edition, section 670, which includes the following statement: "*Even if the rents and profits of the mortgaged property are expressly pledged* for the security of the mortgage debt, with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to the rents and profits

until he takes actual possession, or until possession is taken in his behalf by a receiver.''

The court also recites several other authorities and reaches the conclusion, notwithstanding the cases of *Montgomery* v. *Merrill,* 65 Cal. 432 [4 Pac. 414], and *Treat* v. *Dorman,* 100 Cal. 623, *supra* (which, according to the court, are distinguishable), that a mortgage of land, together with its rents, issues and profits, is limited in its effect so far as growing crops are concerned to crops growing upon the land at the time of the foreclosure, and as to crops harvested between the time of the giving of the mortgage and its foreclosure the mortgagor may exercise absolute dominion as if the mortgage did not exist.

In *Bank of Woodland* v. *Christie,* 6 Cal. Unrep. 545 [62 Pac. 400], the plaintiff recovered judgment to foreclose a mortgage on certain land, together with the rents, issues, and profits thereof. Either on the same day that judgment was rendered, or on the day following (and before the foreclosure sale took place), the mortgagor sold an undivided one-third of the crop on the land. Thereafter the mortgagee made a motion that a receiver be appointed ''to take possession and charge of the crops that were growing on the land mortgaged and ordered to be sold by the judgment in said cause . . . at the time of the foreclosure, for the purpose of subjecting them to the payment of the judgment.'' The motion was denied. On appeal it was held that the right of the mortgagor to dispose of crops growing on the mortgaged premises was not divested by foreclosure proceedings until sale under the decree.

In the case of *Modesto Bank* v. *Owens,* 121 Cal. 223 [53 Pac. 552] where the controversy was between the owner of a mortgage covering land, together with rents, issues, and profits thereof, and the owner of a subsequent mortgage on a crop on the land, it was held that the latter mortgage took precedence, even though taken with notice. With reference to that point, the following appears in the opinion:

''It is said that Haslacher & Kahn had notice of plaintiff's mortgage, and therefore were not encumbrancers in good faith. The plaintiff's mortgage did not cover the crop, but constituted a lien upon the land only, and therefore it did not matter whether they knew it or not. No amount of notice could make it a chattel mortgage.''

And regarding the ruling in *Simpson* v. *Ferguson*, 112 Cal. 180 [53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484], the court, through Temple, J., said: "As I understand *Simpson* v. *Ferguson, supra*, it is there held that such a mortgage does not constitute a lien upon the growing crops, even as against the mortgagor."

The rule as announced to the effect that a land mortgage, including rents, issues and profits, not executed in the form prescribed for chattel mortgages, is ineffectual to give to the mortgagee any lien on or right to crops growing on the land, even after the appointment of a receiver, as against third persons, is recognized in *Cowdery* v. *London etc. Bank,* 139 Cal. 298, 308 [96 Am. St. Rep. 115, 73 Pac. 196], where authorities are cited. Perhaps the same principle is expressed in *Freedman's Saving etc. Co.* v. *Shepherd,* 127 U. S. 494 [32 L. Ed. 163, 8 Sup. Ct. Rep. 1250, see, also, Rose's U. S. Notes], where it is said: " . . . even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf, by a receiver." (Citing authorities.)

The case of *Ahern* v. *Littl,* 90 N. J. Eq. 72 [105 Atl. 597], was a foreclosure suit in which a receiver was appointed to take the growing crops and also grain already cut but not gathered. It was held that a mortgage which covered the "profits, privileges, and advantages, with the appurtenances to the same belonging," created no lien on either the growing crops or those already cut at the time the receiver was appointed.

See, also, the following cases: *Bank of Woodland* v. *Heron,* 120 Cal. 614 [52 Pac. 1006] ; *Kountze* v. *Omaha Hotel Co.,* 107 U. S. 378 [27 L. Ed. 609, 2 Sup. Ct. Rep. 911]; *West* v. *Conant,* 100 Cal. 231 [34 Pac. 705]; *Freeman* v. *Campbell,* 109 Cal. 360 [42 Pac. 35]; *Sexton* v. *Breese,* 135 N. Y. 387 [32 N. E. 133].

Reverting to the two authorities relied upon by respondent herein to sustain the judgment, namely, *Montgomery* v. *Merrill,* 65 Cal. 432 [4 Pac. 414], and *Treat* v. *Dorman,* 100 Cal. 623 [35 Pac. 86], it will be noted that in the former

case the receiver harvested a crop which was growing on the mortgaged premises *at the time the receiver was appointed;* while in the latter case no claim of priority was made in the trial court by the owner of the subsequent chattel mortgage on the crop, and the decree gave the appellant "everything it asked." Furthermore, with reference thereto, as is stated by the court in the case of *Simpson* v. *Ferguson,* 112 Cal. 180, 189 [53 Am. St. Rep. 201, 44 Pac. 484, 486]: "The party's subsequent claim on the appeal to a priority of lien on the crop, and to a right to a different judgment, does not appear to have received very favorable or careful consideration, but apparently the case went off largely on the theory that appellant had received all it asked in the court below"; and the case could not be considered "as binding authority." But whatever view may be taken regarding the point decided in either or both of the cases under consideration, it would appear that if they or either of them may be considered as authority for holding that in the circumstances of the instant case the receiver was legally authorized to demand and receive the proceeds derived from the sale of the fruit taken by the mortgagor from the mortgaged premises prior to the appointment of the receiver—such cases are contrary not only to the general weight of authority, but to cases decided by the supreme court of this state.

[2] But in effect it is argued by respondent that, even assuming the exercise by the trial court of jurisdiction which it did not possess and the consequent illegality of the order of the court to which reference has been had, yet that because of the fact that the order was made at least in apparent conformity with the powers of the court, the San Dimas Lemon Association in obeying such order should be protected from civil liability. In answer to such suggestion, appellant cites the following authorities: *Staples* v. *May,* 87 Cal. 178 [25 Pac. 346], *California Title Ins. & Trust Co.* v. *Consolidated Piedmont Cable Co.,* 117 Cal. 237 [49 Pac. 1], and *Kreling* v. *Kreling,* 118 Cal. 421 [50 Pac. 549].

In the case first cited (*Staples* v. *May,* 87 Cal. 178 [25 Pac. 346]), the action was brought against a receiver for damages arising out of acts committed by him which were alleged to be beyond the authority conferred upon him by

the order of his appointment. The court held that the receiver had not ''even color of authority'' to do the acts of which complaint was made, and consequently that *he* was liable for the resultant damage. However, in the course of the opinion, in discussing the effect of the order by the court creating a receivership which in terms might include properties not described by a mortgage which was being foreclosed, the following language appears:

''As to the terms of the order, if they embraced property not included in either of the securities, the order was to that extent in excess of the jurisdiction of the court and void. But construed with reference to the pleadings upon which they were based, the several orders appointing the receiver and defining his powers and duties did not apply to any property except that against which the foreclosure was sought.''

The second case (*California Title Ins. & Trust Co.* v. *Consolidated Piedmont Cable Co.,* 117 Cal. 237 [49 Pac. 1]) was like the first in that it unquestionably appeared that the *receiver* had exceeded his express authority, and for which acts *he* was held liable.

The third case (*Kreling* v. *Kreling,* 118 Cal. 421 [50 Pac. 549]), was an appeal from an order appointing a receiver made after judgment, which order gave power to the receiver to take possession of certain property not included in the judgment. In effect the court ruled that the only property of which the receiver could rightfully take possession was that which was in litigation, and ''to the extent, therefore, that the order appointing the receiver embraced this (other) property, it was in excess of the jurisdiction of the court and void.''

It will be noted that in none of the cases to which reference has been had were the facts analogous to those present in the instant case; nor was any indication given as to what ruling would have been proper were a receiver erroneously acting under express orders of the court. On the other hand, and as countervailing any inference which might arise from the language of the court in any or all of the authorities cited by appellant, respondent has directed attention to the case of *Havemeyer* v. *Superior Court,* 84 Cal. 327, 396 [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121], where the rights and duties not only of a receiver, but of a

stranger to the proceeding as well, are considered.    In part, the court spoke as follows:

"When a receiver holds by a valid appointment containing no directions in excess of the jurisdiction of the court, so long as he acts in pursuance of the orders of the court he cannot ordinarily invade the rights of parties or strangers to the litigation. If he does an injury, he does it by exceeding his authority. In such case the fault is his, and his alone. If he attempts to take property lawfully in the possession of another, and to which he is not entitled, his attempt may be resisted, just as any other trespasser may be resisted, and the person defending his lawful possession is not brought in conflict with the court. If he by any means gains possession of the property claimed by a stranger, the court will either order him to restore it, or if the title is in doubt, permit an action to be brought against him to try the title.

"But when the court has exceeded its jurisdiction in appointing a receiver, or in directing him to take specific property out of the possession of a stranger, the injury that results is directly due to the action of the court; the wrong is in the order of the court, not in the receiver's transgression of the order. In such case it seems clear that the appropriate remedy is in some writ or proceeding which operates upon the court, as such, to restrain its judicial action, and not in the sort of resistance that may be opposed to an ordinary wrongdoer, or in such an action as may be brought against a private person who has committed a trespass. However confident he may be of his right to resist, no prudent man will take the risk of resisting the plain terms of an order of court, and no rule of practice should be laid down which will compel a man in that situation to defend his possession by force in order to avoid the necessity of resorting to an action to recover it. On the contrary, all men should be encouraged to avoid forcible resistance to orders of courts, no matter how plainly in excess of jurisdiction, by firmly upholding and freely administering the remedies provided for the summary correction of such excesses."

The record in the instant case shows that prior to the rendition of judgment in the foreclosure suit the defendant therein assigned to the plaintiff herein all his interest

in his claim against the San Dimas Association, and that prior to said assignment the assignee had knowledge of the appointment of the receiver and of all the facts pertinent to the controversy—notwithstanding which he took no appeal, but permitted the judgment to become final; nor did the assignee institute any proceeding in connection with the foreclosure suit to remedy the wrong and the ensuing damage to which he was subjected. His only action in the premises was the commencement of the present litigation. The language of the court in the Havemeyer case is that "the appropriate remedy is in some writ or proceeding which operates upon the court, as such, to restrain its judicial action, . . . ," and may possibly apply not only to the person in possession of the property wrongfully taken by the receiver, but as well to the person claiming to be the lawful owner of such property; at any rate, so far as concerns the person in possession, "however confident he may be of his right to resist" an order of the court, it is his duty to obey; and "no rule of practice should be laid down which will compel a man in that situation to defend his possession by force," or "resist the plain terms of an order of court," especially in view of the fact that the only person having an apparent right to the property in question is unconcerned as to the effect or the consequences of the order.

No authority has been discovered which would indicate that in circumstances such as are here present the duty is thrust upon the person upon whom the demand is made at his own expense and inconvenience to institute appropriate action or proceedings to test the validity of the receiver's order, or to obey it at his peril. If the principle for which appellant contends be correct, no one will be safe without rigid investigation of the law in complying with any order of court; for example, if money in bank should be levied upon in execution of a judgment, the banker, in order to secure protection from possible civil liability, will be obliged to ascertain the solution of the broad question of whether the court had jurisdiction in the premises, to say nothing of his duty to determine the legality of the various other steps incident to execution. Take another illustration: A receiver for a corporation trans-

acting a considerable volume of business has been appointed by the trial court. Acting under express orders from such court, he demands and collects large sums of money from hundreds of persons owing money to the corporation; likewise under such authority, he commences actions against other persons against whom the corporation has claims—on some of which he recovers judgment, while as to others, judgment is rendered against him. Still other persons, having claims against the corporation, are authorized to sue the receiver thereon—succeeding in some, and failing in others. The receiver finally renders his account, is discharged and his bond exonerated. Later, it is discovered that the court exceeded its jurisdiction in appointing the receiver and in making the several orders to which reference has been had. Is it the law that each and all of the acts of the receiver are void and must be held for naught? Must the several debtors of the corporation, each of whom has paid his indebtedness, either after demand by the receiver, authorized by the court, or after judgment has regularly been obtained against him, again pay the debt owing by him to the corporation? Is each of the several judgments in the actions brought against the corporation invalid? If the correct answer to each of such queries be ''Yes,'' the human mind will have difficulty in grasping the ultimate effect of such a rule upon the respect which should be accorded courts of justice.

It is clear that if such proposed principle be followed, in every case involving an order to take possession of property supposedly belonging to the defendant, before any person upon whom such order may be served, may safely obey it, he will at least be compelled to determine whether the facts set forth in the complaint state a cause of action; which oftentimes is an exceedingly difficult matter, and frequently involves a question regarding which lawyers, well versed in the law, may differ one from the other. Where no appearance has been made by the defendant, as may occur in a divorce case, and in which matter a receiver may be appointed and an order made on a banking institution to pay money as attorneys' fees or alimony *pendente lite,* among other things the bank of necessity will be compelled to pass upon the question of whether the defendant has been

properly served with process. Then, too, the unsettled and possibly unstable state of the law with reference to the various legal questions involved would have to be taken into consideration. For instance, consider the conditions presented in the instant case: Let it be assumed that the San Dimas Lemon Association was advised that it could obey the order of the court in question only at its peril. Accordingly it investigated the statutes and decisions of the courts of this state with reference to the matter, with the result that it discovered the three authorities heretofore cited herein which indicate that the court had jurisdiction to make the order; also, the other cases to which reference has been had, which point to the opposite conclusion. Which line of cases should the association follow? If the first, and the appellate and the supreme court of this state should disagree with the conclusion reached by the association, the result would be a double payment by the association of the amount owing to the mortgagor, to say nothing of costs and attorneys' fees; if the second line of cases were to be followed and the association refuse to obey the order of the trial court, a citation for contempt of court would result, with the probable consequence of a jail commitment (however long) until the order was obeyed. But if it may be assumed that both the appellate and the supreme court of this state should decree the legality of the order, the association might still doubt the correctness of the decision; and in view of the possibility of a federal question being involved, the association might wish to secure the judgment of the supreme court of the United States with reference thereto, which, of course, would involve the necessity of further investigation of the law, especially of the decisions of the last-named court. The confusion and delay which would result from adherence to a rule which would place such burdens on persons situated as was the defendant herein, if not disastrous, would be well-nigh intolerable. An order in effect decreeing the validity of a former order would be subjected to suspicion and criticism for the same reasons as attached to the original order; and so on to the end at least of all things terrestrial. Rather than establish such a rule, the principle should be indulged that courts and their officers are acting lawfully and in the performance of a duty enjoined by law, and that reliance may safely be

placed therein by all persons thrown in contact with such institutions of our government.

The judgment is affirmed.

YORK, J., concurred.

CONREY, P. J., Dissenting.—I dissent. I agree with the decision on the first proposition, which is to the effect that the order requiring the receiver to collect from the San Dimas Lemon Association, and ordering that association to pay over to the receiver the money in question, was a void order. I disagree with the second proposition, which runs to the effect that the association having paid the money to the receiver may now use the fact of such payment as a defense against the plaintiff's demand in the present action. It may be conceded that if the receiver had been actually seizing physical property and thereby taking it from the custody of the association, the latter would have been justified in submitting to such force, or threatened use of force, and in refraining from any attempt to resist such seizure. That appears to be in accordance with the opinion of the supreme court as stated in *Havemeyer* v. *Superior Court,* 84 Cal. 327, 397 [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121].

But I hesitate to accept an extension of the Havemeyer decision so as to cover an instance of voluntary payment of money, where the money so paid over to the receiver belongs or is owing to a third person, and where the order directing the payment of such money is a void order. In *Estate of Pusey,* 180 Cal. 368 [181 Pac. 648], the supreme court quoted with approval *Forbes* v. *Hyde,* 31 Cal. 342, 348, wherein the court said: "A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever." A similar question was before this court in *Miller* v. *Superior Court,* 63 Cal. App. 1 [217 Pac. 817]. In that case we held that the superior court was without jurisdiction to adjudge the petitioners guilty of contempt by reason of their interference with the enforcement of a void order directing a receiver to take possession of certain property. In *Fidelity etc. Assn.* v. *Citizens T. & S.*

*Bank*, 186 Cal. 689, 692 [200 Pac. 631, 632], the supreme court held that a party in possession of property under a claim of right thereto may not be deprived of such property, "except by an order made in a proceeding to which it was a party and in which it had been given an opportunity to be heard." In the present case, the San Dimas Lemon Association was not given any notice or opportunity to be heard before the void order was made. As I construe the pleadings and the findings, the association was not threatened with any actual seizure to be made of cash in its hands. It had collected certain sums of money which it then owed or as agent was under obligation to pay over to George A. Binney. Upon the mere demand of the receiver that in compliance with said order "it pay to him as such receiver all moneys in its hands then owing to said George A. Binney," the association complied with that demand. But since the order was void, since there was no threatened actual seizure, and since the court was without power by contempt proceedings or otherwise to enforce its order, it cannot be said that the payment of the money by the association to the receiver was other than a voluntary act. I do not agree that by such voluntary act the association has been relieved from its obligation to pay the money to Binney or his assignee. It is my opinion that the judgment should be reversed.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 8, 1927.