[Civ. No. 11773.   First Dist., Div. One.   Apr. 1, 1942.]

GRACE HELEN SMITH, Appellant, v. JAMES FRANK-
LIN SMITH, Respondent.

Joseph F. O'Malley for Appellant.

John Elliott Cook and Louis Oneal for Respondent.

KNIGHT, J.—This is an appeal from an order made pursuant to proceedings supplementary to execution levied on the interest of a beneficiary of a spendthrift trust. Appellant participated in the proceedings without objection and among other things asked for general relief, but now contends that the court decided issues which could be heard and determined by it only in the exercise of its jurisdiction in equity, by way of a creditor's bill.

The parties to the appeal were husband and wife. They separated in 1923, at which time they entered into a property settlement agreement. In 1928 appellant (the wife) obtained an interlocutory decree of divorce, wherein the court approved the property settlement agreement; and in 1929 the final decree of divorce was granted. In 1940 appellant obtained a judgment against respondent for moneys due under said agreement, and thereafter caused an execution to be levied on the trustee of a spendthrift trust created by the will of respondent's sister, of which respondent is principal beneficiary. Respondent moved to release the levy upon the ground that all moneys due him from the trust fund were necessary for his support according to his station in life. It was stated in the notice of motion that the motion would be based on respondent's affidavit and any evidence adduced at the hearing. Such affidavit was attached to the notice of motion, and annexed to the affidavit and made part thereof by special reference was respondent's verified demand wherein in detail he set forth his financial condition, the circumstances attending his mode of life, past and present, and his living requirements and necessities. Appellant appeared by counsel in opposition to the motion and presented her own affidavit wherein she admitted some of the averments made by respondent, and denied others. The affidavit then went on affirmatively to aver facts upon which she relied as showing that no part of the income from said trust was necessary for respondent's support; and the affidavit concluded as follows: "Wherefore, affiant prays the order of court denying said defendant's claim as an exemption of his beneficial interest under his herein stated testamentary trust, and that an order be made directing said testamentary trustee to withhold all

of the aforesaid sums of money monthly now being paid to said defendant; and for such other and further relief or orders as to the court may seem meet and proper in the premises.'' When the motion came on for hearing the parties stipulated that respondent's right to the income from the trust was liable to the levy of execution, subject, however, to his claim of exemption by reason of the spendthrift provisions and his necessities of life; and thereupon the parties proceeded to try to have the court determine the issue of how much money was reasonably necessary for the support of respondent according to his station in life. Evidence was introduced by both parties, and after a full hearing on the merits the trial court made its order whereby it found and determined the maximum amount that was conservatively and reasonably necessary for respondent's support according to his station in life. It was ordered, therefore, that he was entitled to receive and take all income from said trust exempt from legal process ''unless and until'' the same ''shall have attained'' the maximum amount fixed by said order; and the sheriff was directed to release the levy of execution as to said income accordingly. Appellant, being dissatisfied with the maximum amount so fixed by the trial court, took this appeal from said order, and as stated, for the first time challenges the jurisdiction of the trial court to hear and determine the issue thus submitted to it. ▪▪ In this regard she contends that it could exercise its jurisdiction in a matter of this kind only in equity through the medium of a creditor's bill. There is no merit in the contention.

In this state it has been held repeatedly that statutory proceedings supplementary to execution (sec. 714 et seq. Code Civ. Proc.) were designed to take the place of a creditor's bill (*Adams* v. *Hackett*, 7 Cal. 187; *Staples* v. *May*, 87 Cal. 178 [ 25 Pac. 346]; *Pacific Bank* v. *Robinson*, 57 Cal. 520 [40 Am. Rep. 120]; *Travis Glass Co.* v. *Ibbetson*, 186 Cal. 724 [200 Pac. 595]; *McCullough* v. *Clark*, 41 Cal. 298; *McKenzie* v. *Hill*, 9 Cal. App. 78 [98 Pac. 55]; *Herrlich* v. *Kaufmann*, 99 Cal. 271 [33 Pac. 857, 37 Am. St. Rep. 50]; 7 Cal. Jur. p. 800); so that any property which was reachable by a creditor's bill may now be reached by the process of such proceedings (*Staples* v. *May, supra; Pacific Bank* v. *Robinson, supra*). (See also 11 Cal. Jur. p. 156.) As said in 11 Cal. Jur. p. 146-7: ''Supplementary proceedings are special proceedings of statutory origin, summary in character, instituted subsequent to

a judgment in an action and to the issuance of execution, and sometimes after the return of execution unsatisfied, for the purpose of discovering and reaching assets of a judgment debtor, and applying them to the satisfaction of the judgment. They are regarded as proceedings in an action, but auxiliary and supplementary thereto. Under the old system of practice when a judgment creditor had exhausted the remedy by writ of execution, he had a right to invoke the jurisdiction of a court of equity by a proceeding known as a creditor's suit for the purpose of compelling a discovery of assets tangible or intangible and applying them to the satisfaction of his execution. And formerly this was the only method of reaching assets which could not be seized on execution. Supplementary proceedings were created to provide an easier and less expensive method of reaching the same result, and are intended as a substitute for creditors' suits.''

In the leading case of *Herrlich* v. *Kaufmann, supra,* at pages 274, 275-6 it was said: ''Formerly assets of a judgment debtor which could not be effectively seized by the sheriff under an execution, such as a debt owing to the defendant, could be reached, upon a proper showing, through a court of equity by means of a creditors' bill or suit, but in this state, and in most of the other states, a legal remedy is afforded by statutes providing for proceedings supplementary to execution, and the general rule is that when there are such statutory proceedings they must be pursued . . . It has been several times held by this court that the statutory proceedings about proceedings supplementary to execution are a substitute for a creditors' bill. In *Adams* v. *Hackett,* 7 Cal [187] 201, the court say: 'In reference to the chapter prescribing the mode of proceedings supplementary to execution, it seems clear that those provisions were intended as a substitute for what was called ''a creditors' bill.'' This is so stated by the practice commissioners in their original note to this chapter in the New York Code. The design was, in the language of those commissioners, ''to furnish a cheaper and easier method.'' The different sections of this chapter when taken altogether form a consistent and harmonious whole; and when fairly and liberally carried out, afford a cheaper and easier method than the former one by creditors' bill.' In *Pacific Bank* v. *Robinson,* 57 Cal. [520] 522, 40 Am. Rep. 120, the court say: 'Proceedings under sections 714 to 721 and section 574 of the Code of Civil Procedure were intended as a substitute for the creditors' bill as formerly used in chancery. (*Adams* v. *Hackett,* 7 Cal. [187]

201; *Lynch* v. *Johnson,* 48 N. Y. [27] 33.) So that any property which was reached by a creditors' bill may now be reached by the process of proceedings supplementary to execution.' In *Habenicht* v. *Lissak,* 78 Cal. [351] 357 [20 Pac. 874] 12 Am. St. Rep. 63 [5 L. R. A. 713], the court say: 'In *Pacific Bank* v. *Robinson,* 57 Cal. 520, 40 Am. Rep. 120, it was held that the proceedings supplementary to execution are intended to take the place of the creditors' bill.' (See also *McCullough* v. *Clark,* 41 Cal. [298] 302; *High* v. *Bank of Commerce,* 95 Cal. 386 [30 Pac. 556] 29 Am. St. Rep. 121; also *Graham* v. *La Crosse etc. R. R. Co.,* 10 Wis. 459; *Hexter* v. *Clifford,* 5 Colo. 168; and cases cited in note to *Lathrop* v. *Clapp,* [40 N. Y. 328] 100 Am. Dec. 501, in support of the statement therein made that 'in nearly all of the states these proceedings supplemental to execution are regarded as a substitute for the creditors' bill of the chancery practice.') It is not necessary, however, to go to the length of saying that a creditors' bill could not be sustained here under any circumstances; for there might, perhaps, be cases in which the statutory proceedings would not afford adequate relief; but they must be pursued, unless in those exceptional cases in which it appears that equity must be invoked because legal remedies are unavailing."

It follows, therefore, that since the parties here elected to invoke the summary proceedings provided by the statute, rather than have their controversy heard and determined in equity by way of a creditor's bill, it was within the scope of the trial court's jurisdiction so to hear and determine the matter at issue in such proceeding.

The case of *Canfield* v. *Security-First Nat. Bank,* 13 Cal. (2d) 1 [87 P. (2d) 830], involved in part a similar issue, and in passing upon the question of the application of section 859 of the Civil Code the court there said: "Appellants' rights are given to them by section 859 of the Civil Code— that is by creditor's bill in equity"; and doubtless the matter here could have been so heard and determined. But there is nothing to be found in the Canfield decision, nor in said section 859, which declares that a creditor's bill is the exclusive remedy. Here, unlike the Canfield case, there were no intervening rights of third parties, for under the terms of the spendthrift trust respondent was entitled to a definite nine-tenths of the income after payment of one tenth plus $100 to another. Therefore, even though the trial court had heard and

determined the matter through the medium of a creditor's bill rather than by way of this supplementary proceeding, the subject matter of the controversy, the parties thereto, and the issue involved, would have been precisely the same. The same tribunal was vested with original jurisdiction over both cases at law and suits in equity; therefore, since as we have seen under the decisions above cited the controversy could be heard and determined either as a proceeding at law or in equity, and the parties chose to have it disposed of as a proceeding at law, there was no want of jurisdiction in the trial court so to do. If as appellant asserts a contrary rule prevails in some other state, it is doubtless in conflict with the law of this state, and therefore is not here controlling.

Appellant also makes for the first time on appeal the point that the trustee was a necessary and indispensable party to the present proceeding. But the record shows that the execution was levied on the trustee, and that he made answer to the sheriff at the time of the service of the writ; furthermore, the proceeding in no way involved the trustee's title, interests, discretion or management of the trust fund. If the amount to be paid to the beneficiary had been discretionary with the trustee, as in the Canfield case, then a different situation would have been presented; but here, as stated, the trustee was bound to pay to this beneficiary the entire nine-tenths less $100 of the income from the trust; consequently appellant's rights herein were in no way affected by not having the trustee brought in as a party, if in fact he was not already made so by levying the execution on him.

Another contention urged by appellant is that the effect of the order was to "increase" respondent's allowance from the trust fund to $750 a month. But a reading of the order shows that the contention is without merit. The contention is based upon the fact that from 1935, the date of the rendition of the decree of distribution, to October, 1940, the date of the levy of the execution, respondent received from said trust fund monthly payments ranging only from $210.48 to $548.17. The order declared that "a sum of $750 a month is conservatively and reasonably necessary for his support in accordance with his station in life," and that "his receipts from said trust are wholly disbursed so far as they will go for necessary personal and household expenses. They have fallen short, and must continue to fall short so far as is now known, of what is reasonably necessary for his support in accordance with his station in life. He is entitled to receive and take the

same exempt from legal process and the claims of creditors, and this plaintiff's claim thereto, *unless and until* they shall have attained an average amount of $750 a month, the average to be taken in each calendar year.'' (Italics added.) It will be seen, therefore, that the court simply decided the issue presented, that is, the amount reasonably necessary for respondent's support according to his station in life; and held in effect that any sum paid in excess of this amount was liable to the claims of his creditors. Before the court could find whether there was a surplus, it was necessary for it to determine the amount necessary for the defendant's support, and in doing so it was within its power to fix such sum in excess of what respondent was actually receiving, under the circumstances. It may be conceded that if respondent's financial condition becomes changed, for instance if the trust income ceases to be his sole means of support, such change could be urged as ground for modification of the present order.

The statement is made in appellant's brief that the trial court was ''informed *in limine* that there was then pending a creditor's bill filed by the plaintiff elsewhere''; but this statement is positively denied in respondent's brief, and the record fails to disclose anything which may be taken in support of appellant's statement or from which it may be inferred that a creditor's bill was pending at the time these supplementary proceedings took place. In any event, nowhere does the record show, nor does appellant claim, that she made any objection whatever to the hearing or determination of the issue in the present proceeding.

Nor can we sustain appellant's second major ground of appeal that the evidence is insufficient to support the trial court's basic finding that $750 a month is conservatively and reasonably necessary for respondent's support in accordance with his station in life.

A former appeal was taken by appellant from a judgment in respondent's favor, based on the verdict of a jury in an action brought by appellant to recover money claimed to be due under an agreement made in 1928 modifying the agreement of 1923, wherein the judgment was affirmed (*Smith* v. *Smith*, 7 Cal. App. (2d) 271 [46 P. (2d) 232]); and the background of the case as it appears from the decision rendered on that appeal and as shown by the record herein may be stated as follows: Respondent is a retired physician, and at the time these supplementary proceedings were had was

67 years of age, and resided at the Huntington Apartments in San Francisco. He is a graduate of Cooper Medical School and the Royal College of Surgeons in England, and at the time of his retirement in 1929 enjoyed a lucrative practice averaging $25,000 a year. Following his separation from appellant in 1923 and during the last years of his practice his income from sources apart from his practice ranged from $200,000 to $400,000 a year. But subsequent to his retirement and during the ensuing depression years, the financial reverses he suffered and the heavy expenses he was compelled to meet wiped out his entire fortune, so that for several years preceding the levy of the execution herein his only source of income was from the trust created by his sister's will; and because of having undergone a major abdominal operation a few years ago he has been incapacitated from again entering the medical practice or engaging in any gainful occupation.

By the terms of the 1923 property settlement agreement respondent agreed to pay appellant $250 monthly during her lifetime; and he fully performed his part of that agreement up to May, 1928, when a new agreement was made. It confirmed the 1923 agreement, but provided that the monthly payments be increased to $300; and respondent further agreed to make a cash payment to appellant of $10,000, in consideration of which appellant agreed to refrain from attacking the agreement or from making any demands on respondent or his property; also from molesting or interfering with respondent or his full enjoyment of his property. It was further agreed that upon the breach by appellant of the latter promise, the 1928 agreement should be of no further force; that the rights of the parties should thereafter be governed by the 1923 agreement, and that the extra $50 a month and the $10,000 theretofore paid pursuant to the 1928 agreement should be applied as advance payments on the 1923 agreement. On the day following the execution of the 1928 agreement appellant obtained an interlocutory decree of divorce, and therein the property settlement agreement was approved by the court. In January, 1929, respondent retired from the practice; a few months later the final decree of divorce was entered; and some time thereafter, the year not appearing in the record, respondent again married. He paid the $10,000 and the monthly $300 payments to appellant in compliance with the 1928 agreement until October, 1931, when his monthly payments grew less; and about April, 1933, he discontinued them entirely. Thereafter and in 1934 appellant commenced an action on the

1928 agreement, and as a defense respondent pleaded a breach by appellant of the molestation covenants thereof, and claimed that the total extra payments made by him under the 1928 agreement were in excess of all sums accruing under the 1923 agreement. The jury found for respondent, and as stated the judgment entered thereon was affirmed on appeal, the reviewing court saying in part that the evidence of molestation showed that respondent felt obliged to move from San Francisco and seek a new and less troubled home and field for practice in Los Angeles. Thereafter, due to heavy financial losses and the fact that he had given up his medical practice, he fell in arrears in making the payments required by the 1923 agreement, and in June, 1940, appellant obtained a judgment against him therefor in the sum of approximately $11,500. Meanwhile respondent's sister died, leaving the will creating said spendthrift trust. The decree of distribution was rendered in September, 1935, and as above mentioned, from that time until October, 1940, when the execution was levied, respondent's nine-tenths of the income from the trust ranged from some $210 to about $548 monthly, which was paid to him by the trustee.

The trial court found and the evidence shows that respondent has always been accustomed to all reasonable comforts in his home and surroundings, including servants and automobiles, and to extended trips abroad; and that his circle of friends embraces persons of independent means, prominent in professional, business and social groups in his home community. The evidence further shows that on account of his financial reverses he has been compelled to dispense with the use of an automobile and with servants, except occasional household help; that he has been forced to give up recreations and club memberships, and has minimized entertainment of friends to a point where he can but occasionally have guests at his home; that he has had to forego travelling, and many other pleasures he formerly enjoyed; that all of the income from the trust has been expended for his necessary living expenses and household bills, so far as it would go; and that the receipts have fallen very considerably short of his reasonable necessities of life.

Appellant argues that the trial court fixed the amount necessary to support respondent on the basis of his station in life as it was ten years ago, when he was extremely wealthy, rather than on the basis of what is now actually necessary for

his support; and in this connection she avers in her affidavit that standing in his present wife's name is an elaborate home in Palo Alto. Respondent testified, however, that the property in Palo Alto is heavily mortgaged; and there is in his testimony and affidavit ample evidentiary support of the trial court's findings in the particulars in which they are attacked by appellant; and there can be no comparison whatever between this case and the Canfield case, wherein it was shown that the beneficiary's "needs" therein included unreasonable extravagances and luxuries, and expenses for lavish entertainment and gambling losses. As said in the Canfield case, the statute fixes no standards by which the amounts necessary for the support of the beneficiary are to be ascertained; and that in ascertaining the proper allowance, the courts of this state have held that the beneficiary is entitled to receive free from the claims of his creditors sufficient income to support himself and those dependent upon him, according to the mode of life to which they have been accustomed, and to care for any affliction from which he or his family may be suffering; that the amount varies according to the station in life of the beneficiary; that no absolute fixed sum can be used to apply to all cases; that the "cost of living, cost of housing, medical cost, the manner in which the beneficiary has been reared, the number and health of his dependents, his own health, his entire background—all these and perhaps others should be considered." Furthermore, as pointed out in that case, the question is one peculiarly proper, primarily at least, for the determination of the trial court, after hearing evidence as to the character, circumstances and condition of the party. Applying the foregoing legal principles to the present case, it is our conclusion that the trial court's finding is not wanting in evidentiary support, and that the maximum amount fixed is not unreasonable.

The judgment is affirmed.

Peters, P. J., and Jones (B. C.), J., pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 28, 1942.