[Civ. No. 20947. First Dist., Div. One. Sept. 26, 1963.]

HARLEY J. McALLISTER et al., Plaintiffs and Appellants, v. AUGUST G. METZGER et al., Defendants and Respondents.

Elton F. Martin for Plaintiffs and Appellants.

Lacey, Holbrook & Meyenberg and Werner D. Meyenberg for Defendants and Respondents.

SULLIVAN, J.—Plaintiffs appeal from an adverse judgment rendered after a nonjury trial in an action for damages for conversion.

In September 1955 defendants Mr. and Mrs. Metzger sold to plaintiffs Mr. and Mrs. McAllister a 600-acre ranch located in Monterey County together with all buildings, appurtenances and equipment thereon, taking back from plaintiffs a purchase money deed of trust to secure payment of a balance of $137,500.

Included in the above sale, as the parties agree, was a sprinkling system consisting of approximately 7,000 feet of 4-inch aluminum pipe, various sprinkler heads and related equipment. The pipe was in sections which could be fastened together by coupling devices that snapped on and off. While lines of pipe could be used on the ground and moved from one spot to another, the sprinklers were also mounted on wheels so that they could be moved by certain motors in large sections up and down a field while the sprinklers were rotating. It was also possible for the entire system to be hooked together so as to form one continuous line of sprinklers. During the winter, the system was dismantled and the sections of pipe were disconnected and stored. After plaintiffs took possession of the ranch, they used the system to sprinkle the strawberry field as well as the permanent pasture.

Plaintiffs, upon acquiring the property, also made a number of flumes for use in irrigating the strawberries. These were redwood boxes from 15 to 20 feet long made with an 8-inch board on the bottom and one 2-inch board on each side. The cracks were then tarred over and the troughs joined end

to end so as to make a continuous conduit. Such flumes were placed on the ground between the rows of strawberries and connected with the water supply. The water ran along the troughs or flumes and seeped into the ground through a series of holes bored in the sides.

Plaintiffs also purchased from another source and moved on the ranch premises a five-room cottage. It was placed on mud sills rather than a cement foundation, remodeled, and provided with water, gas and electric service. It is to be noted that neither the cottage nor the flumes were a part of the original sale.

In 1957 plaintiffs defaulted in the payment of the promissory note which was secured by the above-mentioned deed of trust. Defendants thereupon commenced an action for specific performance of the deed of trust and on October 31, 1957, obtained an order appointing one Stracner receiver "of all that real property, improvements and crops growing" on the ranch.[1] Stracner was a boxmaker by occupation and had been in the employ of Metzger. Shortly after his appointment as receiver he took possession of the ranch and attached to various articles of personal property located thereon, tags which stated in substance that such property was under the control of a receiver. Among other things, he tagged the aluminum sprinkler system, the flumes and the cottage. Evidence was introduced that Metzger, apparently acting on the advice of his attorney, directed Stracner to tag everything on the ranch. Metzger testified that three or four days later the tags were removed from the cottage and certain other items of property which admittedly belonged to plaintiffs.

However, plaintiffs continued to live on the ranch after the appointment of the receiver and remained there until February 1958. On February 25, 1958, the ranch was sold pursuant to the power of sale contained in the deed of trust, defendants being the purchasers at the trustees' sale. In April 1958, Stracner filed with the court his first and final account as receiver which was approved and settled by order of court made on May 2, 1958.

---

[1] The order further provided "[t]hat said Receiver is directed to enter upon and take possession of the premises and property thereon as aforedescribed, and use, operate, manage and control said property and conduct the business thereof and perform such acts as necessary or proper to conserve the value thereof and collect and receive the rents, issues and profits and the income therefrom and apply the same in the same manner as the proceeds of the sale of said premises as more particularly described in said Deed of Trust; ..."

Plaintiffs commenced the instant action on February 20, 1958, against Mr. and Mrs. Metzger, Stracner, individually and as trustee, and Coast Counties Land Title Co., trustee under the deed of trust. The original complaint sought a decree quieting title to eight items of personal property located on the ranch, including the portable aluminum sprinkling system, and one two-bedroom cottage, but not the flumes. In their answer, defendants Metzger admitted that plaintiffs were the owners of all the personal property except the sprinkling system. No further proceedings were taken until July 20, 1961, over three years later, when plaintiffs moved for leave to file an amended complaint. Their motion was granted.

Pursuant to such leave of court, plaintiffs, on August 15, 1961, filed an ''Amended Complaint For Conversion of Personal Property'' naming Mr. and Mrs. Metzger as sole defendants, and alleging in substance the following: that ''on February 20, 1958, at the time of commencement of this action, and at all times herein mentioned, plaintiffs were the owners'' of the following personal property located on the ranch: (1) ''[a]ll portable irrigation pipe and flumes and appurtenances thereto'' and (2) ''[o]ne portable two-bedroom cottage''; that on or about November 1, 1957, defendants took possession of said personal property under a claim that it was part of the real property covered by the deed of trust; that defendants had no right, title, lien or interest in said personal property and the same was no part of the real property; that on February 25, 1958,[2] defendants sold said personal property and wrongfully converted the same to their own use to plaintiffs' damage in the sum of $28,000. Defendants in their answer again admitted plaintiffs' ownership of the cottage, denied all other material allegations of the amended complaint, and raised several affirmative defenses which we need not set forth in detail.[3]

---

[2] The amended complaint originally gave the date as February 25, 1957, an error since the receiver Stracner was not appointed until October 31, 1957, and the trustees' sale to which the allegation obviously refers was on February 25, 1958. It was amended on its face at trial.

[3] This can be summarized as follows: that the amended complaint was barred by the statute of limitations; that defendants having recovered a judgment against plaintiffs in the receivership action, a writ of execution was issued and levy made on the sprinkling system and flumes, these defendants thereafter purchasing said property at a sheriff's sale in August 1961; that because plaintiffs did not seek injunctive relief under their original complaint, they waived their right to the property;

The court found that the allegations of the amended complaint were true insofar as they related to the cottage but untrue insofar as they related to the sprinkling system and flumes in that the last mentioned property "was at all times attached, affixed and appurtenant to the real property so as to be a part thereof and was a part of the security of a Deed of Trust executed by the plaintiffs as Trustors in favor of the defendants as Beneficiaries"; that the allegations relating to the acts of the defendants on November 1, 1957, were untrue; that the allegations relating to the acts of the defendants on February 25, 1958, were untrue, the court specifically finding that such allegations related "to a time subsequent to the commencement of this action"; and concluded that the plaintiffs were entitled to no recovery. Judgment was rendered accordingly. As we will explain hereafter, the court in effect found that no conversion occurred on November 1, 1957, or at any time prior to the filing of the complaint and that there was no conversion on February 25, 1958, since any occurrence then taking place would have been after the commencement of the action.

Plaintiffs' contentions before us may be summarized as follows: (1) That plaintiffs' proof of conversion prior to the date of the filing of the original complaint was erroneously rejected by the trial court; and (2) there was a conversion of the cottage, sprinkler pipe and flumes as a matter of law.

A proper consideration of the first argument requires us first to set forth certain developments at the trial bearing upon the pleadings. As we shall point out, these had a vital effect on the issues, the proof, and eventually the scope of the findings.

Early in the trial plaintiffs sought to establish through their witness Conroy the reasonable value of the cottage on February 25, 1958, on which date plaintiffs claimed a conversion occurred as a result of the trustees' sale. The court thereupon observed that the date given in the pleadings was February 25, *1957*. Upon request of plaintiffs, it was amended on its face. Defendants then objected that the date of such alleged conversion was five days subsequent to the date of the filing of the original complaint. In the course of considerable colloquy, the court then stated that the paragraph of the amended complaint relating to the events of February 25, 1958, had no place in such pleading and could

and that defendants owned the property by virtue of having purchased it at the trustees' sale in 1958.

be construed as a device to circumvent the statute of limitations.[4] At this point plaintiffs' counsel stated: "I would like leave to amend so that I can prove a conversion prior to the filing of the suit, which I can assure I have evidence to prove." The court then observed that while only one date of conversion appeared to be alleged, namely, February 25, 1958, plaintiffs might offer evidence under the allegations of wrongful possession on November 1, 1957. Plaintiffs' counsel then stated he "would like leave to amend" because plaintiffs were prepared to prove a conversion prior to February 25, 1958. The record does not otherwise disclose the specific details of the amendment thus proposed. The request was repeated in the same general terms. The record at this point shows that plaintiffs' counsel took the position that the allegations relating to taking possession of the property on November 1, 1957, while not expressly using the term conversion, set forth a conversion in substance and that the court felt they might be so construed.

As a result the court ruled that plaintiffs were "barred from showing or proving any conversion after the filing of your Complaint from and after February 20th."[5] The effect of this was to strike the allegations relating to a conversion on February 25, 1958, as a result of the trustees' sale.[6] In

---

[4]The court put its finger on a fatal deficiency. An action brought for a conversion occurring on February 25, 1958, would have had to be commenced no later than February 25, 1961. (Code Civ. Proc., § 338.) Plaintiffs filed their amended complaint on August 15, 1961, several months after the expiration of such statutory period and apparently attempted to rely on the relation back to the time of the commencement of the action. This would have been permissible if the amendment involved merely the addition of matters essential to complete the original cause of action or sought recovery on the same general set of facts alleged in the original complaint. (*Stockwell* v. *McAlvay* (1937) 10 Cal.2d 368, 375 [74 P.2d 504]; *Wennerholm* v. *Stanford University Sch. of Medicine* (1942) 20 Cal.2d 713, 717 [128 P.2d 522, 141 A.L.R. 1358].) It is clear that plaintiffs sought to infuse into the original action, an entirely different cause of action, itself already barred. Indeed in response to the court's inquiry as to why plaintiffs could not have filed an original suit, plaintiffs' counsel responded "It would have been barred by the Statute of Limitations."

[5]The court added: "You can probably amend and show conversion prior to that time, but it is rather an indefinite way."

[6]The court stated: "In regard to the value on or about the 25th of February 1958 and the effect of that ruling is almost the same as if the Court granted a motion to strike out paragraph 3 .... So that leaves us almost with just paragraph 2, and without paragraph 3,..."

our view, the record at this point clearly indicates that the court would receive evidence of a conversion or conversions occurring prior to February 20, 1958. Plaintiffs' counsel thereupon stated: ''I would amend paragraph 3 that the date of 1958 refers to the sale of the property under a trustees sale, and prior to February 20, 1958, it was wrongfully converted.'' The court replied that such had not been plaintiffs' intention since it was apparent that they had intended to allege a conversion on February 25, 1958, the date of the trustees' sale.

We find no error inhering in, or subsequently arising from, these rulings. Plaintiffs argue that the denial of their motion to amend was error, that the court should have considered the proof of the conversion date as an immaterial variance from the pleaded date, and that the judgment was not on the merits. None of these arguments have merit.

In *Feykert* v. *Hardy* (1963) 213 Cal.App.2d 67, 75 [28 Cal. Rptr. 510], we said: ''The allowance or disallowance of amendments to pleadings during the course of the trial rests largely in the discretion of the trial court (*Neher* v. *Kauffman* (1925) 197 Cal. 674, 686 [242 P. 713]) and its ruling will not be disturbed unless it clearly appears that such discretion has been abused. (*Hagar* v. *Home Stores, Inc.* (1927) 85 Cal. App. 533, 535 [259 P. 1007].) ▉ The trial court has a wide discretion in such matters where the purpose of the amendment is to raise new issues after the pleadings have been settled and the trial has commenced. (*Burr* v. *Pacific Indemnity Co.* (1942) 56 Cal.App.2d 352, 360 [133 P.2d 24].)''

▉ We find no abuse of discretion here. The court properly refused plaintiffs' motion to amend paragraph 3 which referred to an alleged conversion on February 25, 1958, because it was obvious, as plaintiffs conceded, that it was their intention to allege in such paragraph a conversion predicated upon the trustees' sale. This event occurred after the commencement of the action and the allegations relating to it were in effect stricken. Plaintiffs could not rely on it. It is difficult to understand how they could transform it into some other act of conversion.

▉ Plaintiffs' other requests to amend were general in nature and without any statement from plaintiffs as to the particular amendments they desired. None of them were denied. In fact, as we have pointed out, the court indicated that it would permit plaintiffs to offer proof under para-

graph 2 of any alleged acts of conversion taking place between November 1957 (the time mentioned in said paragraph) and the date of the filing of the original complaint. Such evidence was received. Plaintiffs have not directed our attention to, nor have we found, any instance in the record where the court excluded evidence relating to events occurring during such period of time. Thus, plaintiffs were not prejudiced in any way by the fact that the pleading was not amended, assuming *arguendo* that a proper and sufficient motion to amend had been made. Thus, contrary to plaintiffs' assertion, the court did not disregard their proof and "bind" them to an averment of conversion on February 25, 1958.

Plaintiffs' claim that there was no judgment on the merits requires no extensive reply. As we have pointed out, the court properly rejected evidence of the alleged act of conversion based on the trustees' sale, received all offered evidence of acts occurring prior to the commencement of the action, made findings of fact and conclusions of law thereon and rendered judgment. There is simply no basis for plaintiffs' claim that this was not on the merits.

We turn to plaintiffs' second contention that there was a conversion as a matter of law of the sprinkler pipe and flumes, and of the cottage. As we have pointed out, the trial court found that the sprinkler pipe and flumes were affixed and appurtenant to the real property so as to be a part thereof and were part of the security of the deed of trust.[7] The court's finding that this sprinkling system was a part of the security is supported by the provisions of the deed of trust itself, quite apart from any consideration of the law of fixtures. That instrument provided "[t]hat any and all . . . sprinklers and sprinkling systems and equipment, . . . flumes, pipes and pipe lines, now installed on said real property or which may hereafter be installed thereon, and all replacements, repairs or additions thereto are hereby declared to be a part of the real property described in this Deed and subject thereto."[8]

---

[7] For convenience we will refer to the property in question as sprinkler pipe and flumes, although it is clear from the amended complaint as well as the findings that this includes all appurtenances and related equipment. Plaintiffs' classifying of the pipes and flumes together seems to indicate that they constitute the sprinkling system for the ranch.

[8] The entire provision is as follows: "A. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES: First: —

Plaintiffs argue that the foregoing provision without extrinsic evidence to the contrary was susceptible of only one construction, namely as referring to an irrigation system set up in a permanent position; and that, therefore, the sprinkler pipe and flumes were not covered by the provision since, as plaintiffs claim, such property, particularly the pipe, was established by unconflicting evidence to be separate items of personal property. Defendants argue that the provision was clear and unambiguous but that if it was not determined to be so on its face, the trial court could have so concluded and have found the property in question to be covered by the deed of trust, as a result of having considered certain testimony in the record.

Our first inquiry, therefore, must be as to whether the court below concluded that the deed of trust provision was ambiguous and thereafter admitted extrinsic evidence as an aid to interpretation. ▮ We find nowhere in the record a statement or holding by the court that the provision was ambiguous. This was a question of law to be determined by the court before admitting extrinsic evidence and while the law does not specify how the court shall make the required determination, it is generally considered that when it admits the extrinsic evidence, it necessarily rules that the contract before it is ambiguous or uncertain. (*Schmidt* v. *Macco Construction Co.* (1953) 119 Cal.App.2d 717, 730 [260 P.2d 230]; *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 169 [20 Cal.Rptr. 747].) Except for one incident in the record hereafter noted, we have not found anything in the instant record indicating that extrinsic evidence was admitted.

During plaintiffs' examination of Mr. Metzger as an adverse witness, the court received in evidence over defendants' objection, Metzger's written authorization to sell the ranch for the purpose of showing that the sprinkler pipe would be left on the ranch and go with any sale. The record

---

That any and all plumbing and plumbing fixtures, hot water heaters, furnaces, heating appliances, wiring, gas and electric light fixtures and equipment, chandeliers, ventilating equipment, wall and door beds, shade and curtain fixtures, awnings, venetian shades, window screens, linoleum, sprinklers and sprinkling systems and equipment, refrigerators (built in), pumps, pump houses, engines, motors, pumping machinery, electric switches and electrical equipment, flumes, pipes and pipe lines, now installed on said real property or which may hereafter be installed thereon, and all replacements, repairs or additions thereto are hereby declared be a part of the real property described in this Deed and subject thereto.''

is not clear at this point. Defendants objected on grounds of relevancy and materiality urging that the offered document "has no relation whatever to the security...." Upon overruling the objection the court said: "It may be an explanation. *I'm not saying the terms are ambiguous,* but if it is it might be an explanation of it." (Italics added.) We do not construe this incident as entailing the admission of extrinsic evidence to aid interpretation of the deed of trust. It is clear that the trial judge did not consider that document ambiguous. In our view, the evidence was admitted to show that the pipe went with the sale of the ranch. No mention is made anywhere by the offering party that the deed of trust was ambiguous. After an examination of the entire record, we have found no indication that extrinsic evidence was admitted in aid of interpretation of the provision in question or that the trial court determined such provision to be ambiguous or uncertain.( *Schmidt* v. *Macco Construction Co., supra,* 119 Cal.App.2d 717, 730; *Greenberg* v. *Hastie, supra,* 202 Cal.App.2d 159, 169.)

█ In the absence of extrinsic evidence, the question of interpretation is one of law. We are not bound by the trial court's interpretation and we must therefore determine for ourselves the meaning of the provision from an examination of its terms. (*Estate of Platt* (1942) 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization* (1954) 42 Cal.2d 376, 381 [267 P.2d 257]; *Ziganto* v. *Taylor* (1961) 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229].)

█ In our opinion the meaning of the deed of trust provision is plain and clear. It expresses an agreement between the parties that certain specified property shall be considered part of the realty. Specifically enumerated are "sprinklers and sprinkling systems and equipment" as well as "flumes." It cannot be questioned that the sprinkler pipe and flumes here in controversy answer the above description and fall within the coverage of the provision. Indeed, even if the word "flumes" were not used in the deed of trust, we think that the sprinkler pipe, flumes and related equipment would answer the description "sprinkling system" and thus come within the compass of the provision.

█ Contrary to plaintiffs' claim, the rule of *ejusdem generis* is plainly inapplicable as an instrument of interpretation. Plaintiffs seek to invoke this rule so as to narrow the definition of the terms "sprinklers and sprinkling systems and equipment" and "flumes" and thus preclude their

application to the property on the ranch. It is obvious that the above crucial words of the provision are not general words which follow more particularized and specific ones and thus must be construed as restricted in meaning to things of the same kind as those first mentioned. Indeed, nowhere in the entire provision (see footnote 8, *ante*) is there any such general language following particular terms so as to bring the desired rule into play. Nor do we find anywhere any inconsistency or ambiguity which is an essential prerequisite to invoking the rule. (See *Pasadena University* v. *County of Los Angeles* (1923) 190 Cal. 786, 790 [214 P. 868]; 17A C.J.S. 173-176; cf. *Wagner* v. *Shapona* (1954) 123 Cal. App.2d 451, 462-463 [267 P.2d 378].[9])

Plaintiffs argue that the sprinklers and flumes do not fall within the deed of trust provision because they were not "installed." Webster's Third New International Dictionary gives the following definition for the verb "install": "to set up for use or service." Webster's New International Dictionary (2d ed.) gives: "To set up or fix, as a lighting system, for use or service." Plaintiffs themselves agree upon such a definition of the term.

The record before us shows that the sprinkler equipment was set up for use on the ranch when the plaintiffs inspected the property prior to the sale, when they went into possession and, even sometime later, when Stracner took over as receiver. After taking possession, plaintiffs used the equipment to sprinkle both the strawberries and the pasture. As thus "set up" for use and used, clearly the equipment was "installed" on the ranch. We do not think that it lost its character of installed equipment merely because sections of the pipe were stored on occasions, as for example during the winter. The record also shows that the wooden flumes were "set up" for use. Plaintiffs placed them between the rows of strawberries where they remained as a sprinkling system all during the period of time involved in the instant action.

In view of the foregoing, it is clear that by virtue of the provision contained in the deed of trust, the foregoing property became "a part of the real property" and part of the security of the deed of trust. Since we reach this conclusion, it is not necessary for us to determine whether the sprinkler pipe and flumes were part of the realty under the law of fixtures and apart from the foregoing provision. Stracner, the

---

[9]Overruled on other grounds in *Neff* v. *Ernst* (1957) 48 Cal.2d 628, 634 [311 P.2d 849].

receiver, was therefore properly authorized to take possession of it and to use it in connection with his management of the ranch. (See footnote 1, *ante*.) No action on his part contained in this record and occurring during the time period defined by the trial court could possibly constitute a basis for the conversion of such property so as to fasten liability on Stracner or the defendants. We conclude that the trial court's finding that no conversion occurred as to the foregoing property is amply supported by the evidence.

Plaintiffs claim that the court erred in excluding certain documentary evidence relating to the sprinkler pipe. Some of these were letters between plaintiffs and the broker written both before and after the contract of sale but prior to the closing of the sale which in substance reaffirm the understanding of the parties that the portable sprinkler pipe was to go with the ranch.[10] The remaining two documents relate to the purchase of the ranch and a portion of the sprinkler pipe by the Metzgers in 1953. It is argued that the trial court should have admitted all of the foregoing documents as extrinsic evidence in aid of the interpretation of the deed of trust provision. We disagree. As we have pointed out, the deed of trust provision was clear and certain. As the court stated in *William B. Logan & Associates* v. *Monogram Precision Industries* (1960) 184 Cal.App.2d 12, 15 [7 Cal. Rptr. 212], ''[w]here the language of a contract is clear and certain and there is no ambiguity or uncertainty in its application to subject matter or manner of performance, parol evidence is inadmissible to vary its meaning. When reduced to writing, such contract represents a complete integration of previous negotiations and the contractual understanding of the parties.'' (See also *Molybdenum Corp. of America* v. *Kasey* (1959) 176 Cal.App.2d 357, 363 [1 Cal.Rptr. 400].)

Actually, in the instant case, plaintiffs were not attempting to explain or show the real meaning of an *ambiguous* agreement but were attempting to establish that certain property (the sprinkler pipe and flumes) did not fall within the *clear* and *explicit* terms of the agreement.

This brings us to a consideration of plaintiffs' claim that there was a conversion of the cottage. To start

---

[10]Plaintiffs appeared to have some concern that the sprinkler pipe would be covered by the agreement which provided that the sale included all buildings, appurtenances and equipment. Finally in one letter dated September 12, 1955, the broker ''guaranteed'' that all pipe and sprinkling equipment would be left and go with the ranch.

with, it must be noted that defendants admitted in the pleadings that plaintiffs were the owners of the cottage. In November 1957, Stracner, the receiver, tagged the cottage when he entered into possession of the ranch. He apparently did so on instructions from Mr. Metzger that he "should tag everything" on the ranch. Metzger was, or claimed to be, acting on the advice of his attorney. The evidence is in conflict as to when the tag was removed from the cottage. In substance, defendants' evidence was that the receiver's tag remained on the cottage for only three days when it was removed by the receiver at the same time as he removed tags from certain other items of property admittedly belonging to plaintiffs. This would mean that the cottage was tagged only for a few days in the early part of November 1957. According to plaintiffs' evidence, the tag was still on the cottage in February 1958 when plaintiffs finally left the ranch.

Plaintiffs also contend that defendants obstructed a possible sale of the cottage. There was evidence introduced by plaintiffs that in February 1958, one Roberts discussed the purchase of the cottage with Mr. McAllister. While he was looking at the cottage, Roberts met Metzger who, according to the former, told Roberts that he couldn't buy the cottage and that if he did, he, Metzger, would not permit him to move it off the ranch. Metzger denied that he had any conversation with Roberts relating to the buying of the cottage although he admitted that Roberts did ask him what was "going on." Counsel for the defendants testified that at the trustees' sale on February 25, 1958, he told one of plaintiffs' counsel to remove the cottage from the ranch as "it is movable and it was moved on and it belongs to you. Will you please come and get it?" Thus the gist of plaintiffs' claim of conversion seems to be the tagging of the cottage and the further act of obstructing any sale of it to Roberts. According to plaintiffs these acts were confirmed and aggravated by the additional circumstance that the receiver Stracner, during all of the time he was in possession of the ranch, kept the only gate to the ranch padlocked.

As we have already pointed out, the trial court found, in terms of the amended complaint, that there was no conversion of the cottage.

Conversion has been generally defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (*Gruber* v. *Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148 [88 P.2d 137]; *Poggi* v. *Scott* (1914) 167 Cal. 372,

375 [139 P. 815, 51 L.R.A.N.S. 925].) The action does not rest upon either the knowledge or the intent of the defendant. (*Poggi* v. *Scott, supra.*) In *Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541, 549-551 [176 P.2d 1], the court said: "The liability of one in possession of real property for the conversion of personal property which he finds upon it, depends, in most cases, upon a determination of whether the conduct of the defendant indicates an assumption of control or ownership over the goods. It is clear that, under some circumstances, refusal of one in possession of real property to permit, upon demand, the owner of chattels which were left there to remove his goods, constitutes conversion. [Citations.] ... To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property. ... Where the conduct complained of does not amount to a substantial interference with possession or the right thereto, but consists of inter-meddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use."

 In the instant case, defendants as beneficiaries under the deed of trust were within their rights in seeking the appointment of a receiver to protect the security upon plaintiffs' default.[11] Essentially, all that the receiver did was to keep one of his tags on the house for three days.[12] During all of this time and in fact during practically all of the receivership and until shortly before the trustees' sale, plaintiffs continued to live on the ranch. No evidence was introduced, however, that defendants or their appointed receiver in fact dispossessed plaintiffs or exerted a physical control over the cottage inconsistent with plaintiffs' rights. The court below could have reasonably concluded that the

[11]The deed of trust provided that on the trustor's default, the trustee and beneficiary, or either of them, could enter upon and take possession of the premises "either personally or by a Receiver appointed by a Court therefor. ..."

[12]We assume that since the cottage was admittedly plaintiffs' property, if the receiver's conduct was actionable, not only would he be personally liable for an act in excess of his authority (*Havemeyer* v. *Superior Court* (1890) 84 Cal. 327, 396 [24 P. 121, 18 Am. St. Rep. 192, 10 L.R.A. 627]; *Binney* v. *San Dimas Lemon Assn.* (1927) 81 Cal.App. 213, 218-220 [253 P. 346]) but liability would also be fastened on defendants who directed the tagging.

tagging of the cottage represented no more than a statement of intention to make a claim against the property unaccompanied by any hostile act or disturbance of physical possession. (Cf. *Kee* v. *Becker* (1942) 54 Cal.App.2d 466, 471-473 [129 P.2d 159].) The prompt removal of the tag confirmed defendants' recognition of plaintiffs' rights in their cottage. The conflict in the evidence relating to Roberts' discussions about buying the cottage was resolved in favor of defendants so that they constitute no basis for conversion.[13] There was no evidence that plaintiffs attempted to move the cottage off the ranch and were prevented from doing so by defendants or the receiver. Indeed, the defendants finally requested plaintiffs to remove the cottage.[14] Furthermore, although plaintiffs were continuously on the ranch during most of this time, they offered no proof that at any time their physical use of the cottage was interfered with or affected in any way. We think that from all this evidence the trial court could have justifiably concluded that no conversion of the cottage occurred.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

---

[13]Contrary to plaintiffs' claim we cannot consider certain remarks of the judge made at the end of the trial to the effect that there was no reason why he should disbelieve plaintiffs' witness Roberts, as impeaching the court's findings or affecting in any way its conclusion that no conversion had occurred. The court's views expressed as the trial progresses are totally ineffective as impeachment of its findings of fact and conclusions of law. (*Scholle* v. *Finnell* (1916) 173 Cal. 372, 376 [159 P. 1179]; *Strudthoff* v. *Yates* (1946) 28 Cal.2d 602, 615-616 [170 P.2d 873]; *Oldis* v. *La Societe Francaise* (1955) 130 Cal.App.2d 461, 471-476 [279 P.2d 184].)

[14]Apparently plaintiffs never removed the cottage. Defendants bought the ranch at the trustees' sale held on February 25, 1958. Finally on August 21, 1961, the cottage and certain other items of personal property were sold at a sheriff's sale as a result of a levy made under a writ of execution issued in the action brought by the Metzgers against the McAllisters to enforce the deed of trust.