[Civ. No. 22488. First Dist., Div. One. Aug. 20, 1965.]

PETER T. POPE et al., Plaintiffs and Appellants, v. NATIONAL AERO FINANCE CO., INC., Defendant and Respondent.

William M. Brinton for Plaintiffs and Appellants.

John Felton Turner for Defendant and Respondent.

SULLIVAN, P. J.—Plaintiffs appeal from an adverse judgment, entered after a nonjury trial, in favor of defendants National Aero Finance Co., Inc. (NAFCO) and Harper Aviation Sales, Inc. (Harper, Inc.).[1]

Alleging that they were judgment creditors of Harper, Inc. all four plaintiffs sought by the first four causes of action of their complaint and amended complaint[2] to set aside certain conveyances of nine aircraft made on March 28, 1961, and May 24, 1961, as being fraudulent under the Uniform Fraudulent Conveyance Act (Civ. Code, §§ 3439.01-3439.12). By the fifth and sixth causes of action plaintiffs Pope, Crowley and Dixon sought to recover damages in the sum of $14,500 for the unlawful detainer and conversion respectively on May 24, 1961, of a certain Cessna Skylane No. N8562T, one of the above nine aircraft, in respect to which said three plaintiffs had both title and the right of immediate possession at the time of the conversion.[3]

---

[1] None of the parties have considered Harper, Inc. as a party to this appeal. The record discloses no pleading filed by Harper, Inc. and no appearance by it at the pretrial conference, although the findings of fact and conclusions of law recite that at the trial Harper, Inc. "was represented by Howard S. Harper in Pro Per." Harper, Inc. was not served with a copy of plaintiffs' briefs herein and has not appeared or filed a brief in this appeal.

[2] Plaintiffs filed an amended complaint incorporating by reference the four causes of action set forth in the original complaint and adding a fifth and sixth cause of action. For convenience we consider both pleadings taken together as the complaint.

[3] Upon service of the summons and complaint on NAFCO, a Kansas corporation, pursuant to Code of Civil Procedure, section 411 and Corporations Code section 6501, that defendant appeared specially in the court below and moved to quash the service of summons on the ground that it was not doing business in California. The motion was granted and on appeal to this court we reversed the order. See *Pope* v. *National Aero Finance Co.* (1963) 220 Cal.App.2d 709 [33 Cal.Rptr. 889].

It was stipulated at the pretrial conference that the aforementioned Cessna Skylane was purchased by Harper, Inc. on January 20, 1960, and at all pertinent times until May 24, 1961, was registered in Harper, Inc.'s name; that said purchase had been financed by a promissory note in the sum of $15,200 and a chattel mortgage as security therefor, executed and delivered by Harper, Inc. to NAFCO which mortgage was filed for record with the Federal Aviation Agency on February 2, 1960;[4] that on March 28, 1961, said Cessna aircraft (along with eight other aircraft by simultaneous refinancing arrangements) was refinanced by a promissory note in the sum of $13,521.12 and a chattel mortgage as security therefor, executed and delivered by Harper, Inc. to NAFCO and that said mortgage was thereafter duly recorded; that on May 24, 1961, NAFCO took possession of the Cessna Skylane; and that on August 23, 1961, NAFCO sold said aircraft to another buyer for $12,031.80.

In substance the trial court found: On August 31, 1961, plaintiffs recovered judgment against Harper, Inc. for $15,305.80 and costs, no part of which had been satisfied. On March 28 and May 24, 1961, Harper, Inc. was the owner of the nine specifically described aircraft including the Cessna Skylane subject to chattel mortgages to NAFCO. Between February 6, 1959, and November 30, 1960, Harper, Inc. executed and delivered to NAFCO promissory notes and chattel mortgages on each of said nine aircraft, each of said chattel mortgages having been recorded immediately thereafter with the Civil Aeronautics Administrator or its successor, the Federal Aviation Agency. On March 28, 1961, at the request of Harper, Inc., NAFCO agreed to and did refinance the nine aircraft by extending the time for payment thereon and receiving from Harper, Inc. new and substitute promissory notes and chattel mortgages for full consideration and good value, each of said new chattel mortgages having been recorded immediately thereafter with the Federal Aviation Agency. After March 28, 1961, and prior to May 24, 1961, Harper, Inc. became in default in the payment of said obligations and on May 24, 1961, NAFCO declared the unpaid

---

[4]It was alleged in the fifth and sixth causes of action already referred to that Pope, Crowley and Dixon on January 31, 1960, without actual or any notice of the note and chattel mortgage executed on January 20, 1960, became the owners and entitled to the immediate possession of the Cessna Skylane, having paid Harper, Inc. the sum of $15,305.80 as the complete purchase price thereof.

balances on each of the notes to be immediately due and payable and took possession of the aircraft.

The essential basis of the judgment denying relief, as disclosed by the findings of fact and conclusions of law and the trial court's memorandum of decision, was that in respect to the first four causes of action none of the conditions necessary for the application of the pertinent sections of the Uniform Fraudulent Conveyance Act existed so as to render fraudulent the transfers made by Harper, Inc. to NAFCO on March 28, 1961, and May 24, 1961; and that in respect to the last two causes of action, plaintiffs Pope, Crowley and Dixon[5] did not acquire any interest in the Cessna Skylane superior to the interest of NAFCO.

Plaintiffs are licensed private pilots who had been flying at the San Carlos Field for several years. Harper, Inc., a California corporation, was at all material times engaged in the business of buying, selling and chartering airplanes, including Cessna airplanes, for which it was a dealer. It conducted operations at San Carlos Field where it organized and managed a number of flying clubs. Prior to January 1960, each of the plaintiffs had become a member of one of these flying clubs for a membership fee of approximately $1,000 which entitled them, in conjunction with the other members of their respective clubs, to fly a specific Cessna 172 airplane. In January 1960, Pope, Crowley and Dixon were each offered the opportunity by Mr. Pritchard, the general manager of Harper, Inc., to replace their memberships in the clubs which flew Cessna 172 planes with shares in a new flying club to be called the Carlos Club. This would be composed of only four members instead of ten and would fly a larger aircraft, namely a Cessna Skylane 182. They accepted the offer and each signed an agreement of purchase of a share of stock in the Carlos Club for $3,826.45[6], which was represented by a credit of $950 for the membership in the old club and by a payment by check for the difference. Crowley and Dixon executed their agreements with Harper, Inc. on January 31, 1960, and paid the balance of their purchase prices on the same date. Pope's agreement is undated but he testified that it was executed on February 1, 1960, the same date he took

---

[5] Plaintiffs' counsel conceded in the court below that plaintiff Phillips "couldn't qualify under the conversion or detainer causes of action."

[6] It is to be noted that the total of these payments is $15,305.80, the amount for which plaintiffs recovered judgment in their separate action against Harper, Inc.

the first flight in the Cessna Skylane, and he paid the balance due on February 29, 1960. Doctor Phillips did not purchase his membership in the Carlos Club until February 1961 and flew the Cessna Skylane for the first time on February 9, 1961. He too was credited with $950 for relinquishment of his membership in another club, and he paid an additional $2,800 for his membership in the Carlos Club.[7] None of the four plaintiffs discovered the existence of any encumbrances on the Cessna Skylane until May 1961.

Despite the provisions of the agreement and the testimony of some of the plaintiffs that they were buying a one-fourth interest in the particular Cessna, the record shows that they never received any documents of title to the airplane or any certificates of stock in the club and never requested any. No articles of incorporation for the Carlos Club were ever filed with the Secretary of State, nor was any permit to issue securities ever issued by the Division of Corporations to the Carlos Club. Moreover, although the agreements recited that the club was the owner of the Cessna Skylane, Dixon and Pope knew that the airplane was registered in the name of Harper, Inc. at all pertinent times. In the meantime plaintiffs continued to fly the Cessna plane off and on over a period of approximately sixteen months until May 1961.

Howard Harper, president of Harper, Inc., testified that the purpose of the flying clubs was to provide new airplanes for the members from time to time but that it was not his understanding that under their method of operation title to the aircraft was to be transferred from Harper, Inc. to the respective club when the last member bought his interest in the club. He explained that during the period from November 1960 to March 1961 Harper, Inc. was not current on its monthly payments to NAFCO under the financing then in effect because at that time the aviation business was a little slow and accordingly in March 1961 arranged with NAFCO

---

[7]Each of the agreements for plaintiffs Pope, Crowley and Dixon entitled ''Contract of Sale'' states, *inter alia*, that Harper, Inc. ''sponsor and directors of cooperative flying clubs'' designated the seller ''Agrees to sell to [the respective plaintiffs] . . . *one share of stock*'' (italics added) in the Carlos Club, a California corporation, for a specified price less allowance for cancellation of membership in the former club; that the purchase price entitles the purchaser to a one-fourth (erroneously designated as one-tenth in Pope's and Crowley's contracts) interest ''in all equipment, assets and interests owned by the named Corporation''; and that the equipment specifically owned by the corporation is a 1960 Skylane ''Reg. # N 8562T,'' based at San Carlos. (N.B. The record before us does not include any contract of sale for plaintiff Phillips.)

for refinancing in order to extend the time for paying the various obligations on the nine airplanes which had been bought at different times. He further testified that when he executed the new notes and chattel mortgages on March 28, 1961, he did so in order to improve the financial condition of Harper, Inc. and that he did not intend or attempt to defraud creditors.

Plaintiffs contend that the evidence in the record not only fails to support the findings material to the first four causes of action laid under the Uniform Fraudulent Conveyance Act but even compels contrary findings supportive of a judgment granting plaintiffs the relief sought.

■ With respect to the first *three* causes of action, in order to establish that the conveyances made or the obligations entered into on March 28, 1961, were fraudulent under Civil Code sections 3439.04, 3439.05 and 3439.06 respectively, it must appear (1) that plaintiffs were creditors of Harper, Inc. on said date; (2) that the conveyances were made or the obligations were entered into when Harper, Inc. was insolvent or thereby rendered insolvent (§ 3439.04) or when it was thereby left with an unreasonably small capital (§ 3439.05) or when it intended or believed that it was incurring debts beyond its ability to pay as they matured (§ 3439.06) ; *and* (3) that the conveyances were made or the obligations entered into without a ''fair consideration.'' (Civ. Code, §§ 3439.04-3439.06;[8] see *TWM Homes, Inc.* v. *Atherwood Realty & Inv. Co.* (1963) 214 Cal.App.2d 826, 842-843 [29 Cal.Rptr. 887].)

It is clear from the record, and defendant does not dispute, that plaintiffs were creditors on the crucial date. As we have already pointed out, the trial court found that the various

[8]Section 3439.04 provides: ''Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.''

Section 3439.05 provides: ''Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.''

Section 3439.06 provides: ''Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.''

obligations and conveyances involved in the refinancing of the nine aircraft were entered into and made for a full consideration and that it was not true that "all or any of said obligations were incurred without fair consideration."

"Fair consideration" is defined by Civil Code section 3439.03[9] as the exchange of property or the satisfaction of an antecedent debt which is the "fair equivalent" of the property conveyed or the obligation entered into. (Civ. Code § 3439.03; *Hansen* v. *Cramer* (1952) 39 Cal.2d 321, 324 [245 P.2d 1059, 30 A.L.R.2d 1204].) As this court said in *United States Fid. & Guar. Co.* v. *Postel* (1944) 64 Cal.App. 2d 567, 571 [149 P.2d 183]: "It is well settled in this state that the extinguishment of security or a preexisting debt constitutes a valuable consideration for the sale or assignment of property. [Citation.] It is also a well-settled law of this state that in the absence of fraud a debtor may prefer one creditor in preference to another." However, if the antecedent indebtedness is disproportionately small as compared with the property transferred or the new obligation entered into, it will not constitute fair consideration under section 3439.03. (See *Bailey* v. *Leeper* (1956) 142 Cal.App.2d 460, 464 [298 P.2d 684]; *Beadle* v. *Northrup* (1949) 90 Cal.App.2d 510, 515 [203 P.2d 552]; *Busick* v. *Mandeville* (1947) 80 Cal.App.2d 853, 856 [183 P.2d 362].)

In the instant case, the record shows that at the request of Harper, Inc. the nine aircraft were refinanced on March 28, 1961, the unpaid balances of all the obligations aggregating $56,307.23 were reinstated, the debtor was relieved of his default in the sum of $15,034.11, and the time for the payment of the then existing indebtedness was extended. In view of the substantial delinquency in payments, it is also to be noted that NAFCO could have taken possession of the aircraft on March 28, 1961, had it not acceded to Harper, Inc.'s request for refinancing. We are satisfied that ample evidence supports the trial court's finding that the refinancing transactions were for a fair consideration. Since,

---

[9]Section 3439.03 provides: "Fair consideration is given for property, or obligation:

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

as we have said, the statutes applicable to the first three causes of action require that want of consideration appear in order to render the conveyances fraudulent (see *Aggregates Associated, Inc.* v. *Packwood* (1962) 58 Cal.2d 580, 589 [25 Cal.Rptr. 545, 375 P.2d 425]; *TWM Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826, 843; *Tokar* v. *Redman* (1956) 138 Cal.App.2d 350, 354 [291 P.2d 987]), we need not consider whether the remaining conditions of the statutes have been satisfied.

With respect to the *fourth* cause of action based on section 3439.07,[10] it is clear that sufficient substantial evidence supports the court's finding that the obligations and conveyances were not entered into or made "with actual or any intent on the part of defendant HARPER or anyone else to hinder, or delay or defraud plaintiffs as creditors. . . ." Howard Harper himself testified that he had no intent to defraud creditors during any of his dealings with NAFCO. At oral argument, plaintiffs' counsel urged upon us that this testimony did not disclaim any intent to *hinder* or *delay* creditors. We are satisfied however that the circumstances surrounding the refinancing transactions and the testimony of Harper in relation thereto, including his testimony that he entered into the transactions in order to improve the financial condition of the company, afford a basis for the inference that he had no intention to *hinder, delay* or *defraud* creditors.

We turn now to plaintiffs'[11] contention that they acquired an interest in the specific Cessna Skylane superior to any interest of NAFCO without notice of the latter's lien and prior to its recordation and that NAFCO converted such interest by taking possession of said aircraft and selling it.[12] The point of the argument is that although the original chattel mortgage on the Cessna was executed and delivered to NAFCO by Harper, Inc. on January 20, 1960, it was not filed

[10]Section 3439.07 provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

[11]As pointed out earlier (see fns. 4 and 5, *ante*) this claim applies only to plaintiffs Pope, Crowley and Dixon. Unless otherwise indicated, our reference to plaintiffs in connection with the present issue means only the aforementioned three plaintiffs.

[12]Plaintiffs confine their argument on appeal to their claim of conversion of the Cessna alleged in the fifth cause of action. While not abandoning their claim of unlawful detainer asserted under the sixth cause of action, they make no separate argument on the point.

for record with the Federal Aviation Agency until February 2, 1960, and that plaintiffs had acquired an interest in the aircraft on January 31, 1960, two days *before* the recordation.

"It is settled that conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (*Gruber* v. *Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148 [88 P.2d 137]; *de Vries* v. *Brumback* (1960) 53 Cal.2d 643, 647 [2 Cal.Rptr. 764, 349 P.2d 532]; *George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 837 [205 P.2d 1037]; *McAllister* v. *Metzger* (1963) 220 Cal.App.2d 692, 706-707 [33 Cal.Rptr. 879].) In an action for conversion, the plaintiff must establish that he had possession or the right to immediate possession of the property at the time of the alleged conversion. (*General Motors Accept. Corp.* v. *Dallas* (1926) 198 Cal. 365, 370-371 [245 P. 184]; *Scutt* v. *Bassett* (1948) 86 Cal.App.2d 373, 375 [194 P.2d 781]; see 48 Cal. Jur.2d, Trover & Conversion, § 54; Prosser on Torts (3d ed.) p. 94.) The action may be maintained by a person who, although not in possession, had a special interest in the property giving him a right to possession at the time of the conversion. (*Mathew* v. *Mathew* (1903) 138 Cal. 334, 336-337 [71 P. 344]; *McCaffey Canning Co., Inc.* v. *Bank of America* (1930) 109 Cal.App. 415, 424 [294 P. 45]; *National Bank of New Zealand* v. *Finn* (1927) 81 Cal.App. 317, 344 [253 P. 757]; *Carvell* v. *Weaver* (1921) 54 Cal.App. 734, 737 [202 P. 897]; see *Camp* v. *Ortega* (1962) 209 Cal.App.2d 275, 286 [25 Cal.Rptr. 837] and cases there collected.)

However in the instant case the trial court found specifically that plaintiffs at no time "became the owners or became entitled to the immediate or any possession" of the airplane. This finding is overwhelmingly supported by the evidence. As previously pointed out, the agreements entered into between Harper, Inc. and plaintiffs Pope, Dixon and Crowley were for the purchase and sale of "one share of stock" in the Carlos Club. They were not agreements for the purchase and sale of the Cessna or of a direct interest in the aircraft. During the sixteen months they were flying the Cessna, Pope and Dixon knew that it was registered in the name of Harper, Inc. and Crowley never bothered to examine the registration certificate. None of the three men ever requested or received certificates of stock in the flying club nor did they at any time request that title to the aircraft be

transferred by Harper, Inc. to the club, much less to plaintiffs themselves. As stated earlier, the Carlos Club was never incorporated and, of course, no permit to issue its stock was ever obtained. The foregoing evidence supports the conclusion that plaintiffs never became owners of the plane or of any special interest therein which entitled them to maintain an action for conversion. On the contrary, it indicates that plaintiffs were fully aware of the fact that they had no ownership or special possessory interest in the plane and were quite content to let matters run along without insisting that the sponsor of the Carlos Club take any steps either to bring the club into existence or to transfer to it the contemplated property. Our foregoing conclusion also disposes of any claim based on the theory of unlawful detainer.

Nevertheless, assuming *arguendo* that as a result of entering into the agreements with Harper, Inc. on or about January 31, 1960, plaintiffs did acquire some sort of special beneficial interest in the Cessna Skylane, we have concluded that such interest was not superior to that of NAFCO under its chattel mortgage.

 The recording and registration of documents of title of aircraft is governed by federal statute rather than by state laws. (See Civ. Code, § 2958a;[13] 49 U.S.C.A. §§ 1401-1405.) Congress has declared that it shall be *"unlawful for any person to operate* or navigate *any aircraft* eligible for registration *if such aircraft is not registered by its owner* as provided [by federal law] . . . ,"* (italics added; 49 U.S.C.A. § 1401, subd. (a)) and has provided for a system for the recording of *any* "conveyance which affects the title to, or any interest in, any civil aircraft. . . ." (49 U.S.C.A. § 1403, subd. (a)(1).) Under section 1403, subdivision (c) no conveyance or instrument, the recording of which is provided for by subsection (a), "shall be valid . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator. . . ."

---

[13]Civil Code section 2958a provides: "A mortgage of any aircraft, or part of any aircraft, registered or licensed under the laws of the United States, is void as against any person (other than the mortgagor, his heirs, and devisee, and persons having actual notice thereof) unless the mortgage is registered or recorded in accordance with the provisions of the laws of the United States providing for such recordation or registration." (Repealed by Stats. 1963, ch. 819, § 2, effective January 1, 1965.)

It has been said that the purpose of Congress in enacting the above recording provisions of the Federal Aviation Act was to protect persons who have dealt on the faith of the recorded title and as to whom it would be a fraud to give effect to unrecorded titles to their detriment. (*Marsden* v. *Southern Flight Service, Inc.* (D.C.M.D.N.C. 1963) 227 F.Supp. 411, 415; *Marshall* v. *Bardin* (1950) 169 Kan. 534 [220 P.2d 187, 190].) The federal statute requiring recordation and providing for the effect to be given to instruments not recorded pursuant thereto, preempts any state laws which might otherwise apply. (*Pacific Financial Corp.* v. *Central Bank & Trust Co.* (5th Cir. 1961) 296 F.2d 68, 71; *Marsden* v. *Southern Flight Service, Inc., supra; United States* v. *United Aircraft Corp.* (D.C.Conn. 1948) 80 F.Supp. 52, 54; *Continental Radio Co.* v. *Continental Bank & Trust Co.* (Tex.Civ.App. 1963) 369 S.W.2d 359, 362; see also *Wilson* v. *Barnes* (1949) 359 Mo. 352, 221 S.W.2d 731, 732.)

In *Continental Radio, supra,* where it was held that, as between an artisan's lien for work done on an airplane and a subsequent chattel mortgage of the plane taken by a bank in good faith and without actual notice of the lien, the mortgage had priority, it was said: ''Congress has prescribed the only way in which aircraft may be transferred and in which liens upon aircraft may be duly recorded. The statute voids as to third parties without actual notice conveyances and liens which are not duly recorded. [Citations.]'' (369 S.W.2d 359, 362.)

In *Marsden* v. *Southern Flight Service, Inc., supra,* 227 F.Supp. 411, plaintiff took possession of the subject airplane and received a bill of sale for it, which plaintiff did not then record. Four months later the aviation company seller, as security for a loan, executed and delivered a chattel mortgage covering the plane, which mortgage and assignment thereof to a bank were immediately filed for record with the Federal Aviation Agency. Neither the mortgagee nor the assignee had actual notice of the prior unrecorded sale to plaintiff. Plaintiff did not record his bill of sale until several months after the recordation of the chattel mortgage and assignment. It was there held that under the registration and recording provisions of the Federal Aviation Act the chattel mortgage and assignment had priority and that ''possession [by plaintiff] alone is not sufficient to give third parties notice of the possessor's interest, especially in a context in which the property is of a kind usually protected by title

papers. To hold otherwise would be to import constructive notice into the statute by the back door. The cases are clear under the Federal Aviation Registration Act and the analogous Federal Ship Mortgage Act that the plain requirement of 'actual notice' in the statute may not be avoided in this manner.'' (227 F.Supp. at pp. 416-417.)

In *James Talcott, Inc.* v. *Bank of Miami Beach* (Fla.App. 1962) 143 So.2d 657 it was held that as between two chattel mortgages of an airplane where neither mortgagee had notice of the other's lien, neither mortgage was valid as against the other *until* recordation with the Federal Aviation Agency. ''Thus, while Talcott holding the mortgage issued second was unaffected by the existence of the earlier unrecorded mortgage—until the latter was recorded—by force of the same statute, Talcott's later mortgage was ineffective with reference to the aircraft against the holder of the earlier mortgage until Talcott should record its mortgage. [Citation.] Therefore, the priorities were established when the bank recorded its mortgage prior to the time that the Talcott mortgage was placed of record.'' (P. 659.)

Even if, as we here assume for the sake of argument, plaintiffs actually acquired some interest in the Cessna Skylane by virtue of their agreements, we are of the opinion that under the abovementioned federal statute and the above cases interpreting it, it was incumbent upon them to record the documents under which they claimed ownership[14] and having failed to do so at any time are not entitled to priority over NAFCO, the chattel mortgagee who in addition to acquiring its interest under a prior chattel mortgage filed the same for record in good faith and without any notice of plaintiffs' claims. Plaintiffs rely on *Aircraft Investment Corp.* v. *Pezzani & Reid Equipment Co.* (D.C.E.D. Mich. 1962) 205 F.Supp. 80. We are not persuaded to follow that case which appears to be in conflict with what we think is the better rule as set forth in the cases already discussed. Furthermore, *Pezzani & Reid* is distinguishable on its facts from the case before us which we think fall more readily within the *Talcott* and *Marsden* cases, *supra*. Examining the respective rights of the parties on the present hypothesis, we conclude that it would be violative of the purpose of the federal act to permit plaintiffs, who did nothing to comply with its registration and recordation provisions, to prevail over

[14]See fn. 4, *ante*.

NAFCO which lent money on the strength of the record title in Harper, Inc. and recorded its mortgage with the federal agency.

The judgment is affirmed.

Molinari, J., and Sims, J., concurred.

A petition for a rehearing was denied September 14, 1965, and appellants' petition for a hearing by the Supreme Court was denied October 13, 1965.