**NORTHERN ILLINOIS CORPORATION,**
a Delaware corporation, Plaintiff,

v.

**BISHOP DISTRIBUTING COMPANY, a**
**Michigan corporation, Marion F. Shields,**
**and Union Bank and Trust Company,**
**N. A., a National banking association,**
**Defendants.**

Civ. A. No. 5317.

United States District Court
W. D. Michigan, S. D.
March 25, 1968.

Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for plaintiff; Peter Armstrong, Grand Rapids, Mich., of counsel.

Stephen A. Bryant, Grand Rapids, Mich., for defendant Union Bank and Trust Co.

Renihan & Goolian, Grand Rapids, Mich., for defendant Marion F. Shields; Joseph A. Renihan, Grand Rapids, Mich., of counsel.

Kingston, Porter & Day, Grand Rapids, Mich., for defendant Bishop Distributing Co.; Robert W. Sawdey, Grand Rapids, Mich., of counsel.

## OPINION

FOX, District Judge.

This matter involves cross-motions for summary judgment brought by plaintiff and defendants in an action in which plaintiff seeks a declaration of its rights with respect to one Mooney aircraft in which it holds a purchase money security interest.

The facts as stipulated by the parties stand as follows.

In September of 1965, Mich-Air Mooney, Inc., a Michigan corporation engaged in selling retail airplanes in Muskegon, Michigan, financed the purchase of one new 1965 Mooney aircraft, Model Super 21 M20E, Serial No. 819, License No. N5908Q, through plaintiff, a Delaware corporation having its principal place of business in DeKalb, Illinois. The security agreement covering the transaction was executed by plaintiff and Mich-Air Mooney, Inc. on September 21,

1965, in Illinois, and delivered to plaintiff on that date.

Plaintiff filed the security agreement for recordation with the Federal Aviation Agency on September 24, 1965. On October 4, 1965, the Federal Aviation Agency recorded the agreement.

Defendants, Bishop Distributing Company and Marion F. Shields, purchased the aircraft from Mich-Air Mooney, Inc. in the ordinary course of its business on September 29, 1965.

Shields paid cash for his interest in the airplane, while Bishop Distributing Company financed its interest through defendant Union Bank and Trust Company. At the time Mich-Air Mooney, Inc. sold the aircraft to Bishop Distributing Company and Shields, none of the defendants had either knowledge or actual notice of plaintiff's security interest in the aircraft, or of Mich-Air Mooney's lack of authority to sell the aircraft in the same manner as any other retailer.

The bill of sale of Bishop Distributing Company and Shields was filed for recordation with the Federal Aviation Agency on October 8, 1965, and recorded on October 27, 1965.

Union Bank and Trust Company's security agreement was initially filed for recordation with the Federal Aviation Agency on October 8, 1965, refiled for recordation on November 1, 1965, and recorded on November 2, 1965.

Subsequent to the above transactions, Mich-Air Mooney, Inc. went into bankruptcy, precipitating the present controversy.

Plaintiff contends that since its security agreement (which is apparently valid under either Michigan or Illinois law) [1] with Mich-Air Mooney, Inc. was duly filed for recordation prior to the time when defendants Bishop Distributing Company and Shields purchased the aircraft, its lien is superior to any interests of the defendants, including that of defendant Union Bank and Trust Company, by virtue of 49 U.S.C. § 1403, which provides in part:

(c) *Validity of conveyances or other instruments; filing.*

No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid * * * against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator * * *

(d) *Effect of recording.*

Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation * * *

Plaintiff has cited numerous cases, including Marsden v. Southern Flight Service, Inc., 227 F.Supp. 411 (M.D.N.C. 1961), International Atlas Services Inc. v. Twentieth Cent. Airport Co., 59 Cal. Rptr. 495 (Cal.App.1967), cert. den. 389 U.S. 1038, 88 S.Ct. 775, 19 L.Ed.2d 827 (1968), and Pope v. National Aero Finance Co., 236 Cal.App.2d 722, 46 Cal. Rptr. 233 (1965), as authority for hold-

---

1. 49 U.S.C. § 1406 provides:

> The validity of any instrument the recording of which is provided for by section 1403 of this title shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument. Where the place of intended delivery of such instrument is specified herein, it shall constitute presumptive evidence that such instrument was delivered at the place so specified.

We interpret this statute to apply only to the initial or inherent validity of an instrument as discussed in Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599, 603 (E.D.Ark., 1964).

ing that the Federal Aviation Act of 1958 pre-empts all other laws regarding the validity and effect of recordation of instruments affecting title to or any interest in any civil aircraft in the United States.

■■ Although none of these cases dealt with the precise issues presented in the instant case, we recognize that Congress has the power to legislate with respect to the registration of conveyances and liens affecting title to aircraft. We acknowledge that federal law rather than state law governs the rights of claimants to aircraft to the extent that these rights are dependent upon the fact or time of recordation of conveyances. Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599 (E.D.Ark., 1964).

■ The rights of Bishop Distributing Company and Shields are, however, not solely dependent upon recording, for as the court in Texas National Bank of Houston, supra, observed:

It does not follow, however, that section 1403 has repealed or abolished the general rule of chattel mortgage law that when a mortgagee consents to the sale of a mortgaged chattel free of lien by the mortgagor, the purchaser takes free of the mortgage lien and his rights are superior to those of the mortgagee. 15 Am.Jur.2d, Chattel Mortgages, §§ 150, 151 and 153; 14 C.J.S. Chattel Mortgages, § 262. And a provision in a chattel mortgage prohibiting a sale of the mortgaged chattel without the mortgagee's consent is waived if the mortgagee knowingly permits the violation of such provision. 15 Am.Jur.2d, p. 324, 235 F.Supp. at 603.

■■ Again in State Securities Company v. Aviation Enterprises, Inc., 355 F.2d 225, 229 (C.A.10, 1966), the court said:

By providing a federal system for registration of conveyances and liens affecting the title to aircraft, Congress has preempted that field and state recording statutes are not applicable to such title instruments.[1] However, questions of the validity of such title documents, actual notice, good faith purchaser status, and the like, must be resolved under state law.[2] (Footnotes omitted.)

See also Aircraft Investment Corp. v. Pezzani & Reid Equipment Co., 205 F. Supp. 80 (E.D.Mich.1962).

The rule that a purchaser of chattel takes free of mortgagee's lien where the mortgagee has allowed the mortgagor to sell the chattel in its regular course of business has been incorporated in § 9.307 of the Uniform Commercial Code, which has as of the date of this opinion been adopted by approximately fifty states, including Michigan and Illinois.

§ 9.307 provides in relevant part:

"(1) A buyer in ordinary course of business (subsection (9) of section 1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

The Official Comment as § 9.104 of the Uniform Commercial Code which sets forth transactions excluded from Article 9 of the Code, states:

Where a federal statute regulates the incidents of security interest in particular types of property, those security interests are of course governed by the federal statute and excluded from this Article. The Ship Mortgage Act, 1920, is an example of such a federal act. Legislation covering aircraft financing has been proposed to the Congress, and, if enacted, would displace this Article in that field. The present provisions of the Civil Aeronautics Act (49 U.S.C.A. Section 523) call for registration of title to and liens upon aircraft with the Civil Aeronautics Administrator and such registration is recognized as equivalent to filing under this Article (Section 9–302(3)); but to the extent that the

Civil Aeronautics Act does not regulate the rights of parties to and third parties affected by such transactions, security interests in aircraft remain subject to this Article, pending passage of federal legislation.

Plaintiff argues that because aircraft are much more costly than household goods or cars, a buyer of an aircraft should be required to conduct an aircraft title search. In this respect, plaintiff contends that all that would have been required of the defendants would have been for them to check with the Federal Aviation Agency in Oklahoma City, Oklahoma.

■ We question whether the price of goods should determine the duties and obligations of the buying public. Plaintiff was aware that Mich-Air Mooney, Inc. purchased the aircraft in order to sell it.

■ Although both plaintiff and defendants are innocent parties to a very unhappy chain of events, in determining who should bear the loss we conclude that buyers in the ordinary course of business should not be required to act at their peril. As Chief Judge Henley said in Texas National Bank of Houston, supra:

> Ordinarily, when a person goes into a merchant's place of business to make a purchase, whether it be of an automobile, a television set, a washing machine, or a pound of nails, the purchaser ought to have the right to assume that the merchant has a right to sell the commodity in question and should not be required to make a record search before purchasing or to see to it that the merchant obtains a valid release of the item from a bank floor plan before delivering it to the purchaser and receiving his money or obligation. The Court sees no reason why that right should not extend to the purchaser of an airplane who buys it from a recognized dealer from a regular inventory or display and in the ordinary

course of business. 235 F.Supp. at 604.

For the above reasons, plaintiff's motion is denied and defendants' motion is granted.

It is so ordered.